UNITED STATES of America, Appellee,

v.

Laurence M. ANDERSON, Appellant.

UNITED STATES of America, Appellee,

v.

Adrian VOLK, Appellant.

UNITED STATES of America, Appellee,

v.

Robert Lee JOHNSON, Appellant.

Nos. 80–1848, 80–1869 and 80–1870.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1981.

Decided Aug. 3, 1981.

Rehearing and Rehearing En Banc
Denied Sept. 16, 1981.

---

Irvin B. Nodland (argued), Lundberg, Conmy, Nodland, Lucas & Schulz, P. C., Bismarck, N. D., for appellant Anderson.

Robert Vogel, Grand Forks, N. D., for appellant Volk.

Brian W. Nelson, Fargo, N. D., for defendant Johnson.

Gary Annear, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before ROSS, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Laurence M. Anderson, Adrian Volk and Robert Lee Johnson were three of seven persons[1] charged in a three-count indictment with distributing a Schedule I controlled substance in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and conspiracy to possess and distribute a Schedule I controlled substance in violation of 21 U.S.C. § 846. Each appeals his respective conviction and sentence.[2] For the reasons set out individually below, we affirm.

Briefly, count I of the indictment charged a sale of 1,044 units of lysergic acid diethylamide (LSD) on March 8, 1979. Count II charged a sale of 5,020 units of LSD on April 30, 1979. Count III detailed a conspiracy to distribute LSD from November 1, 1978, through May 31, 1979.

Five witnesses appeared at the trial on behalf of the government. One was a Chicago chemist who testified only as to the chemical properties of exhibits 1 and 2, the LSD described in counts I and II respectively. Two witnesses were admitted coconspirators or accomplices. Gregory Mannie testified about his relationship to the defendants as far back as February of 1978 and detailed their activities involving marijuana, cocaine and amphetamines as well as LSD. John Otheim's testimony was basically the same as Mannie's but concerned only the events of March 1 through March 20, 1979. The other two witnesses were undercover agents. Drug Enforcement Administration (DEA) agents Lee and Nicks testified about their meetings with Johnson, about observing Volk's car at the site of an alleged meeting between Volk and Mannie, and about mailing exhibits 1 and 2 to the regional laboratory in Chicago.

At the conclusion of this trial,[3] Anderson was convicted of counts I and III, and sentenced to five years for the substantive offense and two consecutive years for conspiracy. Volk was convicted of counts I and III, and sentenced to five years for the substantive offense and two consecutive years for conspiracy. Johnson was convicted of all three counts, and sentenced to five years for each substantive count to run

---

1. One coconspirator pled guilty to one count, testified against the others and received a thirty-day sentence. Of the four arraigned together, one was sentenced under the Youth Corrections Act, 18 U.S.C. § 5010(b), and did not join in this appeal.

2. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

3. The first two trials ended in mistrials. The first mistrial was declared because it was discovered during the trial that one of the jurors was closely acquainted with a witness. The second mistrial was due to the prosecuting attorney's improper closing comment about a defendant's failure to take the witness stand.

concurrently and two consecutive years for conspiracy.

## I. *Anderson*

### A. *Chain of Custody*

■ Anderson contends that the district court erred in admitting exhibits 1 and 2 which had been purchased by the undercover agents. These exhibits were objected to on the ground that there had been no showing what happened to them between chemical analysis and the trial.

The principles governing chain of custody challenges were outlined in *United States v. Lane*, 591 F.2d 961 (D.C.Cir.1979), as follows:

> Tangible evidence of crime is admissible when shown to be "in substantially the same condition as when the crime was committed." And it is to be presumed that the integrity of evidence routinely handled by governmental officials was suitably preserved "[unless the accused makes] a minimal showing of ill will, bad faith, evil motivation, or some evidence of tampering." If, however, that condition is met, the Government must establish that acceptable precautions were taken to maintain the evidence in its original state.
>
> The undertaking on that score need not rule out every conceivable chance that somehow the identity or character of the evidence underwent change. "[T]he possibility of misidentification and adulteration must be eliminated," we have said, "not absolutely, but as a matter of reasonable probability." So long as the court is persuaded that as a matter of normal likelihood the evidence has been adequately safeguarded, the jury should be permitted to consider and assess it in the light of surrounding circumstances.

*Id.* at 962 (footnotes omitted). *See also United States v. Brown*, 482 F.2d 1226, 1228 (8th Cir. 1973); *Brewer v. United States*, 353 F.2d 260, 262–63 (8th Cir. 1965).

In the case at bar, agent Lee testified that, after purchasing the perforated paper which constituted exhibit 1, he took it to his office, heat sealed it in a plastic bag, and marked it for identification. Agent Nicks witnessed these actions and also initialed the seal. Then agent Lee placed the exhibit in the narcotics evidence vault overnight. The next day he mailed it via registered mail to the regional laboratory in Chicago, where evidence technician Charles Stubbs signed for it.

Likewise, agent Nicks testified that, after purchasing the blue blotter paper which constituted exhibit 2, he took it to his office and field tested it. Then he heat sealed it, marked it for identification, and mailed it to the regional laboratory in Chicago, where it was signed for by Charles Stubbs.

Thomas Janovsky, a forensic chemist with the Drug Enforcement Agency in Chicago, testified that he received each exhibit at the vault in the laboratory from Stubbs. Janovsky signed out each exhibit and then placed it in his personal locked box. To begin his analysis, he removed the bottom seal, initialed it, dated it and replaced it inside the evidence. He testified as to the method of analysis. In court, he stated that the resealed exhibits were in essentially the same form as when he had received them.

This is a case where the evidence was handled according to established procedures and suitably preserved. The governmental officials are entitled to the presumption of integrity. Anderson has not made even a minimal showing of improper motivation or tampering. Therefore, this contention fails.

### B. *Sufficiency of Evidence*

Anderson contends that the evidence was insufficient to convict him because it consisted of the uncorroborated testimony of an accomplice and a coconspirator.

Witness Greg Mannie was not named in the indictment; he had cooperated in the investigation. Witness John Otheim was named in the indictment but pled guilty to one count, testified against the others and received a thirty-day sentence. The DEA agents referred to "Laurrie," Anderson's nickname, in their testimonies but only when repeating statements by Mannie and

Otheim. Neither agent had ever met Anderson.

Instruction No. 29, the conspiracy instruction, listed the seven persons named in the indictment as coconspirators Mannie, who was not indicted, is not in the list. Instruction No. 35, the cautionary instruction on accomplice testimony stated:

An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of one who asserts by his testimony that he is an accomplice, may be received in evidence and considered by the jury, even though not corroborated by other evidence, and given such weight as the jury feels it should have. The jury, however, should keep in mind that such testimony is always to be received with caution and considered with great care.

█ As the instruction states, accomplice testimony does not require corroboration and may by itself sustain a conviction. *United States v. Fitts*, 635 F.2d 664, 667 (8th Cir. 1980); *United States v. Knight*, 547 F.2d 75, 76 (8th Cir. 1976); *Williams v. United States*, 328 F.2d 256, 259 (8th Cir.), *cert. denied*, 377 U.S. 969, 84 S.Ct. 1651, 12 L.Ed.2d 739 (1964). Basically, then, Anderson's contention is that the jury was not told by Instruction No. 29 that Mannie, the star witness, was an accomplice whose testimony Instruction No. 35 required them to accept with great caution.

█ None of the four defense counsels objected to those instructions. Failure to object to a jury charge in a timely and specific manner results in a waiver of such objection on appeal. *United States v. Sorenson*, 611 F.2d 701 (8th Cir. 1979). Where no objection to the instructions is made, they may be reviewed only for plain error. *United States v. Gambina*, 564 F.2d 22, 24 (8th Cir. 1977). "Plain error" means that the trial court's action affected the defendant's substantial rights resulting in a miscarriage of justice. *West v. United States*,

359 F.2d 50, 53 (8th Cir.), *cert. denied*, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966).

█ When a portion of the jury instructions is assigned as error, the reviewing court must look to the instructions as a whole. *United States v. Williams*, 604 F.2d 1102, 1120 (8th Cir. 1979); *United States v. Matthews*, 603 F.2d 48, 50 (8th Cir. 1979), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 650 (1980).

█ Having reviewed these instructions as a whole, we find that they are not plainly erroneous. Although Mannie was not listed as a "coconspirator" in Instruction No. 29, it was clear from his own testimony that he was an "accomplice" in the transactions about which he testified. Instruction No. 35 was sufficient to put the jurors on notice that his testimony was to be received with caution. Any error in this regard was harmless.

### C. *Double Punishment*

█ Anderson contends that consecutive punishment for counts I and III constitutes double punishment because the sale alleged in count I is necessarily included in the conspiracy alleged in count III. Anderson cites *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), for the proposition that, if offenses were committed at the same time and were part of a continuous criminal act and inspired by the same criminal intent, they are susceptible of only one punishment. *Bell* is, however, inapposite. *Bell* involved simultaneous transportation of two women in violation of the Mann Act. The Supreme Court held only that, where the penal statute is ambiguous, doubts should be resolved against imposition of a harsher sentence. *Id.* at 83, 75 S.Ct. at 622.

In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), which dealt with the crime of stealing an automobile and the lesser included offense of operating the same vehicle without the owner's consent, the Supreme Court stated:

The applicable rule is that where the same act or transaction constitutes a vio-

lation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. . . .

*Id.* at 166, 97 S.Ct. at 2225, *citing Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The Supreme Court held that the Double Jeopardy Clause forbids cumulative punishment because the latter offense required no proof beyond that required for the former.

Count I charged a sale of 1,044 units of LSD on March 8, 1979, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count III charged that, from November 1, 1978, through May 31, 1979, the defendants conspired with one another, in violation of 21 U.S.C. § 846, to distribute LSD. The fourteen overt acts in furtherance of the conspiracy detailed, not sales of LSD, but transfers of LSD among the coconspirators, which demonstrated their interaction and cooperation. It is clear that each offense required proof of at least one fact which the other did not. *See United States v. Taylor,* 603 F.2d 732, 734 (8th Cir.), *cert. denied,* 444 U.S. 982, 100 S.Ct. 487, 62 L.Ed.2d 487 (1979). Counts I and III charged two separate crimes, and the penalty provisions of each allow separate and distinct sentences.

## II. *Volk*

Volk raises only one issue which is cognizable on appeal. He contends that there were two errors in the admission of evidence. The first, chain of custody of the controlled substance exhibits, was identical to Anderson's contention discussed above. Second, he contends that there was no adequate foundation for identification of the car seen at the site of a meeting as his.

Mannie had informed agents Lee and Nicks that Volk was at a meeting at the Econ-o-tel Motel. Lee and Nicks went there to set up surveillance. Lee saw Volk's Volkswagen at the motel and asked Nicks to make a radio check on the license plate, which he did. The check showed that the car was registered to Volk.

At trial both Mannie and Otheim testified to the meeting with Volk at the Econ-o-tel Motel. Lee and Nicks testified about the radio check on the license plate. No objection was made by Volk's defense attorney to any of this testimony.

 Failure to object to admission of evidence waives that objection on appeal, in the absence of plain error. *United States v. Price,* 464 F.2d 1217 (8th Cir. 1972). There could be no plain error in this regard because the agents' testimonies were merely corroborative of the accomplices' testimonies, which were sufficient in themselves and required no corroboration. *United States v. Taylor,* 599 F.2d 832, 838 (8th Cir. 1979).

## III. *Johnson*

### A. *Insufficient Evidence*

Johnson contends that the evidence adduced at trial was insufficient as a matter of law to sustain his conviction on any of the three counts.

As to count I, he says that the only evidence connecting him with the first sale was Mannie's testimony that Volk told him by phone that Johnson had brought the LSD from Oregon to Bismarck, North Dakota. Mannie further testified, however, that he had been present when Volk and Anderson discussed the sale of LSD with Johnson. After Volk's call, Mannie and Otheim traveled to Volk's apartment in Bismarck where they met with Volk, Anderson and some others to discuss the 40,000 units of LSD. Subsequently, Mannie picked up 5,000 units of LSD from Anderson at Anderson's apartment. Anderson said that he wanted the 5,000 units sold within a week. Mannie and Otheim then returned to Grand Forks where they sold 1,000 units of LSD to agent Lee.

As to count II, Johnson makes a similar argument; he says that the only evidence connecting him with the second sale was a conversation after the sale. Agent Lee testified that Johnson said that he understood Lee and Nicks were not satisfied with the

last purchase of LSD. Johnson said that the quality of the LSD was good but that he would pass on the complaint to his source. In addition, however, Mannie testified that he had been dealing with Johnson's brother concerning the sale of drugs to agent Lee and that the brother had been in touch with Johnson about that sale.

■ A conviction can properly rest on the uncorroborated testimony of an accomplice. *United States v. Knight, supra,* 547 F.2d at 76. Statements of a coconspirator identifying a fellow coconspirator as his source of controlled substances is in furtherance of the conspiracy and therefore admissible. *United States v. Fitts, supra,* 635 F.2d at 666, *citing United States v. Carlson,* 547 F.2d 1346, 1362 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). Where there is sufficient evidence to implicate a defendant as a participant in each transaction, that defendant need not be present on the occasions when controlled substances are actually purchased by an undercover agent, in order to be convicted on charges of distribution. *United States v. Martinez,* 573 F.2d 529, 532 (8th Cir. 1978).

■ Johnson was identified by Mannie as the source of LSD for both sales. Such evidence of participation in each sale, without evidence of physical presence at either transaction, was legally sufficient to sustain his convictions. Moreover, Johnson's own statements to agents Lee and Nicks revealed that he was an active, knowledgeable participant in the second sale.

■ As to count III, apparently, Johnson is arguing that out-of-court statements by coconspirators were not admissible to prove the conspiracy because the court did not rule on the admissibility of hearsay evidence at the close of the defendant's case, but rather waited until after all evidence had been presented. Without such hearsay in the record, he asserts, the court should have directed a verdict of acquittal.

*United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir. 1978), held prospectively that the court must make an on-the-record determination of the admissibility of coconspirator's statements under Fed.R.Evid. 801(d)(2)(E). Its guidelines state that such a statement will be admitted conditionally and "that *at the conclusion of all evidence* the court will make an explicit determination for the record regarding the admissibility of the statement." *Id.* at 1045 (emphasis added). There was no error in this regard.

**B. Alibi Instruction**

Johnson contends that the district court erred in refusing to give his requested alibi instruction because he proved that he was not present at the times or places of the two sales. This contention fails for much the same reason as the previous contention.

■ It is correct that a defendant is entitled to have the jury consider any theory of the case which is supported by law and has some foundation in the evidence, even though the evidence is weak. *United States v. Shewfelt,* 455 F.2d 836, 838 (9th Cir.), *cert. denied,* 406 U.S. 944, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972). Johnson relies on *United States v. Megna,* 450 F.2d 511 (5th Cir. 1971), which held that it was reversible error for the district court to refuse to give a requested alibi instruction. Although that indictment was for burglary, it was unclear whether the jury convicted on a theory of personal participation or merely aiding and abetting. Therefore, the defendant was entitled to have the jury instructed on his theory of defense to the substantive defense. *Id.* at 513.

■ *United States v. Megna* is not on point here, however, because it did not involve a conspiracy. Once the existence of a conspiracy is shown, a defendant's personal participation in overt acts by his coconspirators is not necessary to sustain his conviction on the conspiracy charge. *United States v. Lee,* 483 F.2d 968 (5th Cir. 1973).[4]

---

4. Notwithstanding the government's citations, *United States v. Lee* is inapposite to the issue of an alibi instruction on the substantive of-

fenses. That court declined to reach the issue on the basis of the concurrent sentence doctrine. Here, the sentences are consecutive.

Furthermore, as previously stated, the acts of his coconspirators are attributable to him and he becomes equally liable for them. *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir.), *cert. denied*, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). He need not be present at the drug sales to be convicted on the substantive charges. *United States v. Martinez, supra*, 573 F.2d at 532. Because it was unnecessary for the government to prove Johnson's presence at the sales, the alibi defense was not supported by the law, and no instruction concerning it was required.

#### C. *Cruel and Unusual Punishment*

Johnson also requests this court to reduce his sentence as being harsh and severe. He points out that he had no past criminal record.

Suffice it to say, " . . . a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review." *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). The sentence Johnson received on each count was within statutory limits and, therefore, was not unfairly harsh and did not constitute cruel and unusual punishment.

#### IV. *Other Claims*

Numerous other claims, including claims of ineffective assistance of counsel, have been raised by the appellants. We have considered the record and find that they are without merit.

Accordingly, the judgment of the district court is affirmed in full.