**UNITED STATES of America, Appellee,**

v.

**Dewey Sylvester RANS, Appellant.**

**No. 87–5504.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1988.

Decided July 15, 1988.

Peter Pagones, Aberdeen, S.D., for appellant.

Philip Hogan, Asst. U.S. Atty., for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Dewey Sylvester Rans appeals from his convictions for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, illegal use of a communication facility in violation of 21 U.S.C. § 843, and attempted possession with intent to distribute cocaine in violation of 21 U.S.C. § 841. The district court [1] sentenced Rans to twelve years on the conspiracy count, two years each on two illegal use of communication facilities counts, and ten years on the attempted possession count. All sentences were to run concurrently. For the reasons discussed below, we affirm.

## I. BACKGROUND

Rans was indicted along with two other co-conspirators, Craig Juliano and Gregory Schock. Juliano testified at trial pursuant to a plea agreement. According to Juliano's testimony, from November, 1985,

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

through June, 1986, he, Rans, and Schock were all involved in the sale of cocaine. Juliano would obtain the cocaine in Colorado and would transport it to South Dakota, where Schock and Rans would distribute it. Juliano owned a Toyota pickup, which he used to transport the drugs and which Rans drove on at least one occasion in November, 1985. In January, 1986, Juliano, Schock, and Rans all met in a motel in Sioux Falls, South Dakota, when Juliano brought in two ounces of cocaine.

On June 20, 1986, Juliano mailed two packages containing cocaine via Federal Express from Denver, Colorado, to Aberdeen, South Dakota. One was addressed to "Don Kingson;" the other to "Bill Morton." Both were intended for defendant Rans. The address on Federal Express airbill # 464–348–496 for the Kingson package was 1 North Main, Aberdeen, South Dakota. The address on the Morton package, Federal Express airbill # 070–844–502, was 1505 South Grant, Aberdeen, South Dakota. Both were sent from a "P. Lorsung" in Denver, Colorado.

James Mund was the Federal Express courier who attempted delivery of the packages on Saturday, June 21. Mund testified that when he was unable to locate either addressed, he informed his supervisor, Doug Mayer, who attempted to call the shipper. Mayer was unable to reach a "P. Lorsung" either at the telephone number given on the Federal Express airbills or by calling directory assistance. When these attempts at delivery proved unsuccessful, Mayer sought permission to open the packages. Federal Express policy allows employees to open undeliverable packages to seek further information regarding delivery in the presence of the station manager.

Because the station manager was unavailable, Mayer called the Federal Express security office in Memphis, Tennessee. The Memphis office authorized and instructed Mayer to open the packages. Mayer first opened the Kingson package while talking with the security office, and found what he and Mund believed to be cocaine. After the Kingson package had been opened, defendant Rans came into the

Federal Express office and tried to pick it up. Mund recognized Rans as a truck driver who worked at the Burlington Northern Depot at 1 North Main, the address given for the Kingson package. Because they had been instructed to send both the Morton and Kingson packages to security officials in Memphis, Mayer told Rans the Kingson package was still out with the courier.

Rans knew about the attempted delivery at the Burlington Northern Depot earlier that morning, and gave Mayer another address to deliver the package to and/or a telephone number to call once it arrived back in the Federal Express office. When someone called later on to inquire about the status of the package, they were told it had been turned over to security.

Rans telephoned Juliano in Colorado twice on Saturday, June 21: once to inform him the packages had not been delivered, and a second time to inform him that Federal Express employees would not give him the packages.

## II. DISCUSSION

As grounds for reversal of his convictions, Rans claims the district court erred in admitting exhibit # 5, four baggies containing cocaine, because the government failed to establish its chain of custody. Defendant also contends his convictions violate the double jeopardy clause, the evidence was insufficient to convict him, and his sentence should be overturned.

### A. Chain of Custody

■ Tangible evidence of crime is admissible when shown to be "in substantially the same condition as when the crime was committed." *United States v. Roberts*, 844 F.2d 537, 549 (8th Cir.1988); *United States v. Gatewood*, 786 F.2d 821, 825 (8th Cir. 1986); *United States v. Anderson*, 654 F.2d 1264, 1267 (8th Cir.), *cert. denied*, 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981) (quoting *United States v. Lane*, 591 F.2d 961, 962 (D.C.Cir.1979)). If the accused makes a minimal showing of ill will, bad faith, evil motivation, or some evidence of tampering, the government must estab-

lish that "precautions were taken to maintain the evidence in its original state." *Roberts,* 844 F.2d at 549; *Gatewood,* 786 F.2d at 825.

The undertaking on that score need not rule out every conceivable chance that somehow the identity or character of the evidence underwent change. "[T]he possibility of misidentification and adulteration must be eliminated," we have said, "not absolutely, but as a matter of reasonable probability." So long as the court is persuaded that as a matter of normal likelihood the evidence has been adequately safeguarded, the jury should be permitted to consider and assess it in the light of surrounding circumstances.

*Anderson,* 654 F.2d at 1267. *See United States v. Panas,* 738 F.2d 278, 286–87 (8th Cir.1984); *United States v. Mullins,* 638 F.2d 1151, 1151–52 (8th Cir.1981).

We review the district court's decision to admit the evidence under an abuse of discretion standard. *Hoover v. Thompson,* 787 F.2d 449, 450 (8th Cir.1986); *United States v. Jones,* 687 F.2d 1265, 1267 (8th Cir.1982); *United States v. Brown,* 605 F.2d 389, 394 (8th Cir.), *cert. denied,* 444 U.S. 972, 100 S.Ct. 466, 62 L.Ed.2d 387.

■ Defendant's chain of custody argument regarding exhibit # 5 focuses on evidence presented by the government concerning the handling of the Kingson package and its contents by Federal Express employees. Both Mund and Mayer testified that upon opening the Kingson package, Federal Express airbill # 464–348–496, they found two plain white envelopes inside a larger manila envelope. Inside each white envelope were two baggies filled with three-quarters to an inch of a white powdery substance. Both the manila envelope and the two white envelopes were stapled shut many times. When Mayer informed Memphis security that he believed the substance inside the four baggies was cocaine, security officials advised him to repackage the materials and forward both the Kingson package and the Morton package to Memphis.

Mund testified that they placed the contents of the Kingson package in a new Federal Express courier-pack envelope and shipped this envelope along with the unopened Morton package inside a trailer pack envelope, inside a box, inside a large blue bag with a seal-type plastic tie around it on a Republic airbill going to the Federal Express ramp in Minneapolis for shipment from there to Memphis.

Mayer gave a slightly different version of the repackaging. He testified that the Kingson package was placed with the unopened Morton package first inside a blue bag and then inside a brown box. Mayer identified the Republic airbill, exhibit # 13, which he used to send the box to the Minneapolis Federal Express ramp. Mayer received from Minneapolis the number of the "haz can" in which the packages would then travel to Memphis. A "haz can" is a six by six foot container that goes on DC–10 727 aircraft which Federal Express uses for hazardous material. No "haz can" was available in Aberdeen. Mayer informed Memphis the packages would travel in haz can # AAEO579FE and would arrive in Memphis on Flight 331.

Federal Express security officer Ronald Russell met Flight 331 in Memphis with another security officer on June 22, 1986. He removed three packages from the plane and took them to the squad room. At the squad room, each package was opened. One contained a green leafy substance and is not relevant to the case at bar. There were also two blue Federal Express bags: inside the first blue bag he found a package with airbill # 464–348–496 and Don Kingson's name on it. Inside this package were four white envelopes each containing one baggie of white powder. He weighed the baggies and found a total of 143 grams. The courier package was then resealed in a Federal Express blue bag and held in the safe. Inside the second blue bag Russell found a package with airbill # 070–844–502 and Bill Morton's name on it. This package contained two white envelopes, each containing one baggie of white powder and weighing a total of 71.5 grams. This package was also resealed and placed in the safe.

On Monday morning, security officer Ray Priddy picked up the blue bags containing the Kingson package and the Morton package, assigned each package a case number, and placed them in another safe, where they remained until he transferred them to the Memphis Police Department. At the Police Department, the packages were weighed again; the Kingson package weighed 143 grams. The Memphis Police Department then transferred the Kingson package to the Aberdeen Police Department through the Drug Enforcement Agency and Federal Express. The contents of the four baggies received in Aberdeen were tested by the South Dakota State Crime Lab and were found to be cocaine. The contents of the Morton package were destroyed by the Memphis Police.

In addition to the evidence related above, Federal Express employees Mayer and Russell both identified the four baggies the government sought to introduce as exhibit #5 as the same baggies contained in the Kingson package, airbill #464–348–496. Defendant argues this evidence does not properly authenticate the four baggies because of a "gap" between Mayer's testimony as to the handling of the Kingson package in Aberdeen and Russell's testimony concerning his receipt of the package in Memphis. Defendant points out that the Kingson and Morton packages left South Dakota in one blue bag and a box, but arrived in Memphis in two separate blue bags. Additionally, defendant notes the Kingson package contained two white envelopes with two baggies each inside one larger manila envelope in Aberdeen, but contained four white envelopes with one baggie each and no manila envelope in Memphis.

Defendant does not dispute that the same airbill, #464–348–496, remained with four baggies of a white powdery substance throughout the transfers described. He claims, however, that there is clear evidence of tampering with the outer packages in which the baggies were placed, either in Minneapolis or elsewhere, which the government has not adequately explained. Conceding that government officials are entitled to a presumption of integrity, defendant emphasizes the alleged tampering occurred while the package was in the hands of Federal Express employees, not law enforcement or other government personnel.

We are troubled by the evidence presented in this case. Nonetheless, the issue is whether the district court was properly satisfied that "in reasonable probability the article has not been changed in any important respect." *Hoover v. Thompson*, 787 F.2d 449, 451 (8th Cir.1986) (citing *United States v. Brown*, 482 F.2d 1226, 1228 (8th Cir.1973)). While the evidence may raise questions about the handling of the outer packaging in which the four baggies were placed, it does not suggest any real basis for establishing that either the baggies themselves or their contents were different from those in the Kingson package originally sent by Juliano from Denver. In fact, Juliano identified exhibit #5 as the cocaine he sent in the Kingson package. Under these circumstances, we cannot say the district court abused its discretion in admitting the cocaine. *See Hoover*, 787 F.2d at 451; *United States v. Gatewood*, 786 F.2d 821, 825–26 (8th Cir.1986); *United States v. Mullins*, 638 F.2d 1151, 1152 (8th Cir.1981).

### B. Other Contentions

Defendant makes several additional arguments in his *pro se* brief, including (1) that his conviction of both a conspiracy count and an attempted possession count violates the double jeopardy clause; (2) that there was insufficient evidence to support his convictions; and (3) that he was improperly sentenced by the district court. We have carefully considered each of the arguments presented and find them to be meritless.

### III. CONCLUSION

For all of the foregoing reasons, the judgment of the district court is affirmed.