# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-3835

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff – Appellee, | * |
| | * |
| v. | * |
| | * |
| John Bolden, also known as JB, | * |
| | * |
| Defendant – Appellant. | * |

_____

No. 08-3872

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff – Appellee, | * |
| | * |
| v. | * |
| | * |
| Zechariah Benjamin, also known as Boo, | * |
| | * |
| Defendant – Appellant. | * |

_____

Submitted: October 22, 2009
Filed: March 8, 2010

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

John Bolden and Zechariah Benjamin were found guilty on multiple counts by a jury for their role in a conspiracy to distribute and possess with intent to distribute crack cocaine. The district court[1] sentenced Bolden and Benjamin each to life imprisonment. Bolden and Benjamin appeal their convictions and sentences. We affirm.

I

Bolden and Benjamin are two of five individuals charged in a ten-count indictment filed January 29, 2008. Their arrests stemmed from five controlled purchases conducted by a confidential informant for law enforcement officers. Before each transaction, the informant spoke with Bolden over the telephone to arrange the purchase. During the first transaction on November 29, 2007, the informant purchased 2.7 grams of cocaine base (commonly known as crack cocaine) at an apartment in Cedar Rapids, Iowa. Bolden answered the door to let the informant in the apartment, after which the informant obtained a plastic baggie containing the crack cocaine from Wilson Cleaves, while Bolden sat in a chair having his hair done by Clarence Ross. On December 4, 2007, the informant made a second purchase of 6.4 grams of cocaine base at the apartment. Bolden again opened the door for the informant while Ross took the informant's money and Cleaves provided the cocaine. A third purchase occurred at the apartment on December 13, 2007, during which the informant purchased 5.2 grams of crack cocaine and had a conversation with Benjamin about why she was not able to purchase a grater amount. Benjamin

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

explained their supplies were running low at the time. On December 17, 2007, Cleaves and Benjamin sold 7.28 grams of crack cocaine to the informant at the apartment. Finally, on December 18, 2007, Benjamin sold 10.7 grams of crack cocaine to the confidential informant at the apartment.

On December 19, 2007, a DEA Task Force and the Cedar Rapids Police Department executed a search warrant at the apartment. Pursuant to the search, officers seized 38.9 grams of crack cocaine, a digital scale with white residue on it, a safe, a firearm holster, and more than $6,000 in cash. Bolden, Cleaves, and Ross were present at the apartment and were arrested at that time. Benjamin was arrested the same day at a different location.

At trial, the government offered several individuals as witnesses, including Pepper Hines, a cooperating defendant who made several purchases from Bolden, and Ross and Cleaves, who had been indicted with Bolden and Benjamin. Approximately midway through the trial, during a break, Bolden's girlfriend approached and spoke with two jurors outside the courtroom for approximately five minutes. After learning of the conversation, the court questioned the first juror, who indicated she spoke with Bolden's girlfriend about the weather and did not know her identity or relation to Bolden. Upon a similar inquiry to the second juror, the court determined the second juror spoke with Bolden's girlfriend for a longer period of time about more personal matters, such as the juror's husband's car accident. The second juror also learned the woman was Bolden's girlfriend. The government was concerned of potential bias resulting from the latter conversation because it argued the personal information could be perceived as a threat or as a means to obtain sympathy for Bolden. Bolden's counsel did not object to excusing the juror, but Benjamin's counsel argued the court should give the juror an instruction not to consider the relationship in her deliberations. The court ultimately allowed the first juror to return to the jury, but excused the second juror due to her knowledge of the identity of Bolden's girlfriend.

The jury found Bolden guilty of all five counts he was charged with, including: (1) distribution of 2.7 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count I); (2) distribution and aiding and abetting the distribution of 5 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2 (Counts II and VIII); (3) possession with intent to distribute and aiding and abetting the possession with intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count IX); and (4) conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count X). The jury also found Benjamin guilty of all three counts he was charged with, including: (1) distributing and aiding and abetting the distribution of 5 grams or more of cocaine base after having been convicted of two felony drug offenses (Counts V and VIII) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 851, and 18 U.S.C. § 2, and (2) conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base after two prior felony drug offenses in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851 (Count X).

At sentencing, the district court calculated Bolden's base offense level at 38 pursuant to United States Sentencing Guidelines (U.S.S.G.) §§ 2D1.1(a)(3) and (c)(1) after finding his criminal activity involved more than 4.5 kilograms of crack cocaine or 36,000 kilograms of marijuana-equivalent drugs. The court found Bolden possessed a dangerous weapon in connection with his criminal activity and increased his base offense level by two levels. The court also determined Bolden played a role as an organizer or leader of the criminal activity, which added four levels to his base offense level under U.S.S.G. § 3B1.1(a). While the total offense level after making these adjustments scored a level 44, the district court scored a total offense level of 43 due to a cap on the advisory guideline sentencing table. The district court ultimately sentenced Bolden and Benjamin to life imprisonment. Bolden and Benjamin each filed a timely appeal.

On appeal, Benjamin's sole issue is whether the district court abused its discretion when it dismissed one of the jurors during the trial. Bolden maintains four issues on appeal. He first contends there was insufficient evidence to convict him. Bolden also asserts the district court erred when it found his role in the crimes was a "leader or organizer" instead of a "manager or supervisor" under the Guidelines. Bolden further argues the district court erred in calculating the amount of drugs attributable to him for the purpose of sentencing. Finally, Bolden contends the district court imposed an unreasonable sentence.

II

We first address Benjamin's challenge to the district court's action in excusing a juror during trial after Bolden's girlfriend had a conversation with the juror while on break. We review a district court's decision to remove a juror for abuse of discretion. United States v. Running Horse, 175 F.3d 635, 638 (8th Cir. 1999). "We will uphold the district court's decision to remove a juror 'if the record reflects a legitimate basis for it.'" United States v. Cannon, 475 F.3d 1013, 1023 (8th Cir. 2007) (quoting United States v. Evans, 455 F.3d 823, 824 (8th Cir. 2006)).

Benjamin asserts no legitimate basis existed for the removal of the juror because nothing she learned in the conversation with Bolden's girlfriend would cause her to be impartial. Therefore, Benjamin contends the district court abused its discretion when it removed her from the jury. Moreover, Benjamin asserts he is prejudiced by the juror's removal because it effectively granted the government an additional strike of a juror it preferred not to have on the jury.

We disagree. The district court evinced concern the juror might feel threatened or biased because she had shared personal information with a defendant's girlfriend. The district court also noted the possibility the interaction could prejudice the juror.

See Georgia v. McCollum, 505 U.S. 42, 57 (1992) (discussing the ultimate goal of selecting a jury is to achieve an impartial jury and a fair trial).

Benjamin argues the removal of the juror provided the government with an additional strike, but he does not offer any reason the government would have wanted this particular juror dismissed. Benjamin also does not argue there was any problem with the alternate seated in the dismissed juror's place. Under the circumstances, the district court did not abuse its discretion in erring on the side of caution when the juror in question had contact with an interested third party whose identity was known to the juror.

III

We next address Bolden's challenge to the sufficiency of the evidence. We review a challenge to the sufficiency of the evidence for a conviction to determine if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Birdine, 515 F.3d 842, 844 (8th Cir. 2008). We view the evidence "in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Espino, 317 F.3d 788, 791 (8th Cir. 2003).

Bolden asserts he should not have been convicted on Counts I, II, and VIII because there was insufficient evidence demonstrating he distributed cocaine base. He does not challenge the sufficiency of the evidence on the conspiracy count. In order to convict Bolden on the distribution counts, the government was required to prove beyond a reasonable doubt Bolden knowingly and intentionally distributed cocaine base. United States v. Luster, 896 F.2d 1122, 1126 (8th Cir. 1990).

The evidence produced at trial showed Bolden actively participated in each transaction. One of Bolden's coconspirators testified Bolden was responsible for supplying the drugs sold at the apartment. The informant testified she spoke with Bolden on the phone to set up the controlled purchases. Bolden opened the door for the informant on two occasions and she purchased the drugs from someone other than Bolden. Bolden was present in the room while the transactions took place. More importantly, those individuals who personally handled the drugs testified they did so at Bolden's direction.

This Court has held evidence a defendant acted as a source and facilitated a transaction is sufficient for a conviction under the distribution statute. United States v. Anderson, 654 F.2d 1264, 1270 (8th Cir. 1981) ("Where there is sufficient evidence to implicate a defendant as a participant in each transaction, that defendant need not be present on the occasions when controlled substances are actually purchased by an undercover agent, in order to be convicted on charges of distribution."). In this case, the evidence demonstrated Bolden was not only present during the transactions, but he facilitated the transactions by initiating and securing the conditions of the purchases and instructed others to conduct the transactions. This evidence was sufficient to support the jury's verdict.

Moreover, Bolden does not challenge the sufficiency of evidence relating to his conspiracy conviction. As a result of the conspiracy, it is clear Bolden may be convicted for substantive crimes, such as distribution, committed by other conspirators during and in furtherance of the conspiracy. United States v. Zackery, 494 F.3d 644, 647 (8th Cir. 2007). Despite Bolden's assertions, the government did not need to show actual possession by Bolden to prove the distribution counts. United States v. Sykes, 977 F.2d 1242, 1247 (8th Cir. 1992) (citing United States v. Resnick, 745 F.2d 1179, 1186 (8th Cir. 1984)). Viewing the evidence in the light most favorable to the government, it is clear a reasonable jury could have found Bolden guilty beyond a reasonable doubt on the distribution counts.

We next address Bolden's challenge to the drug amounts attributed to him and the four-level enhancement he received as a result of being a leader or organizer of a criminal activity involving five or more persons. "We review for clear error the district court's findings of fact and apply de novo review to the district court's interpretation and application of the Guidelines." United States v. Spikes, 543 F.3d 1021, 1023 (8th Cir. 2008).

With respect to the drug quantity, we will reverse the district court's determination only if the entire record definitely and firmly convinces us a mistake has been committed. United States v. Davidson, 195 F.3d 402, 410 (8th Cir. 1999). "In determining the drug quantity, the district court may consider any relevant information provided that the information has sufficient indicia of reliability to support its probable accuracy." United States v. Palega, 556 F.3d 709, 716 (8th Cir. 2009) (citing U.S.S.G. § 6A1.3(a) (2007)). "Where the amount of drugs seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." Id. (citing U.S.S.G. § 2D1.1, cmt. n. 12 (2007)).

The district court made the finding the government met its burden of proving the drug quantity by a preponderance of the evidence, resulting in a base offense level of 38. In order to justify this offense level under the Guidelines, the district court needed to find Bolden responsible for over 4,500 grams of cocaine base. U.S.S.G. § 2D1.1(c). The court noted the Presentence Investigation Report ("PSIR") attributed a total of 201,280 kilograms of marijuana equivalent drugs to Bolden. Of this amount, the PSIR attributed 10,044 grams of cocaine base to Bolden.

Bolden primarily challenges the drug quantities attributed to him as a result of two individuals, Pepper Hines and a confidential source, M.Z. Bolden contends Hines's testimony at trial was nonsensical and inconsistent, in part because she could

not have afforded the quantities she claimed. The PSIR attributed 7.99 kilograms of cocaine base from Hines's trial testimony. Bolden concedes he engaged in some transactions with Hines, but he argues the district court erred by not calculating a reasonable amount of drugs attributed to him through Hines's testimony. With respect to M.Z., the PSIR attributed 831 grams of cocaine base as a result of the transactions between her and Bolden. Bolden contends he does not know who M.Z. is, nor did he have an opportunity to cross examine her because she did not testify at trial.

Bolden's challenge to Hines's testimony involves a credibility determination by the district court. "Witness credibility is 'quintessentially a judgment call and virtually unassailable on appeal.'" United States v. Sicaros-Quintero, 557 F.3d 579, 582 (8th Cir. 2009) (quoting United States v. Hart, 544 F.3d 911, 916 (8th Cir. 2008)). In this case, Bolden asserts Hines's trial testimony conflicted with her earlier testimony before the grand jury. The PSIR's drug quantity determination was based on Hines's trial testimony, which attributed 7.99 kilograms of cocaine base to Bolden, rather than her grand jury testimony, which attributed 3,971.25 grams of cocaine base to Bolden. However, it is clear even if the PSIR used Hines's grand jury testimony, Bolden would still be accountable for 6,025.25 grams of cocaine base, which well exceeds the 4,500 grams necessary for a base offense level of 38.

Similarly, Bolden's challenges to the quantities attributed to him based on M.Z.'s statements are unavailing. As noted above, the PSIR attributed 831 grams of cocaine base to Bolden based on M.Z.'s statements. Removing this amount from the 6025.25 grams calculated above leaves Bolden responsible for 5,194.25 grams of cocaine base, still well over the 4,500 grams required for an offense level of 38.

Finally, Bolden contends the district court did not make adequate findings with regard to the amount of drugs attributed to him at sentencing. While Bolden objected to the PSIR, he did not object to the district court's findings at sentencing. We therefore review for plain error. United States v. Mooney, 425 F.3d 1093, 1103-04

(8th Cir. 2005). The district court stated at sentencing it based its determination not on the PSIR alone, but on a careful review of the evidence at trial. The district court noted it had the benefit of being the trial judge in the case, and it heard evidence with regard to Bolden's drug activities and his associations with Darius and Brian Whiting, Benjamin, Cleaves, and Ross, as well as other customers and accomplices. After describing the efforts it took to review the trial transcript and arguments prior to sentencing, the district court stated it had weighed the evidence and made credibility findings in order to determine Bolden was involved with more than 30,000 kilograms of marijuana equivalent drugs.

While we are somewhat troubled by the lack of specificity in the district court's findings, given the fact Bolden did not object to the findings at sentencing and the evidence at trial supported amounts close to those in the PSIR upon which the district court relied, the findings were adequate under the circumstances. It is clear Bolden can be held responsible for all contraband "within the scope of criminal activity jointly undertaken by [him] and reasonably foreseeable to [him]." Davidson, 195 F.3d at 410. As a result, the drug quantity determination was supported by the extensive testimony and other evidence produced at trial. Moreover, the drug quantity determination was "consistent with the guidelines commentary and our prior cases." Sicaros-Quintero, 557 F.3d at 582. Therefore, the base level offense of 38 was not clearly erroneous.

With respect to the four-level enhancement for role in the offense, Bolden contends the district court erred in finding he exercised a leadership and organizational role pursuant to U.S.S.G. § 3B1.1(a). Bolden asserts his role was not greater than a manager or supervisor, which would result in a three-level increase, and the district court did not take into account the different roles he had at different times, and thus did not properly compute his adjusted offense level. We disagree.

This court interprets the terms "organizer" and "leader" broadly. United States v. Garcia, 512 F.3d 1004, 1005 (8th Cir. 2008). In determining whether to apply the enhancement, a sentencing court should consider the defendant's

> exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt n. 4. The enhancement does not apply solely to those who first instigated the criminal activity, and the defendant need not be the only organizer or leader. United States v. Lashley, 251 F.3d 706, 712 (8th Cir. 2001).

In this case, the district court found Bolden directed Cleaves and Ross, and it relied on their trial testimony in establishing the role in the offense. We have upheld a district court's finding on this point where evidence showed the defendant "recruited others to join the conspiracy, he received drug orders from customers, and he directed others to package and deliver drugs." Garcia, 512 F.3d at 1006. The evidence at trial showed Bolden recruited members of the conspiracy and directed those members to distribute drugs. There was evidence he supplied drugs for distribution and retained a large portion of profit for himself. He also played a role in setting up transactions. Under these circumstances, we cannot say the district court clearly erred in applying the four-level enhancement under U.S.S.G. § 3B1.1(a). See Razo-Guerra, 534 F.3d at 976-77 (affirming the application of the leadership enhancement where the defendant recruited others and directed them to make drug deliveries, supplied dealer quantities to others, and made the decision to deliver drugs in a specific area); United States v. Noe, 411 F.3d 878, 889-90 (8th Cir. 2005) (affirming four-level enhancement where the evidence at trial showed the defendant controlled others in the conspiracy and supplied drugs to lower level dealers). Moreover, because we affirm

the drug quantity determination above, this point is irrelevant because a three-level increase under the manager or supervisor role would yield an offense level of 43, the highest level on the sentencing chart and the level used by the district court. See United States v. Tomac, 567 F.3d 383, 385-86 (8th Cir. 2009) (standard for harmless error in calculating Guidelines offense levels).

V

Finally, Bolden challenges the reasonableness of the sentence he received. Specifically, Bolden contends the district court did not adequately take into consideration he was twenty-eight years old at the time of sentencing and a life sentence would be projected to be a term of approximately 49.68 years. The district court also did not give appropriate weight to a study by the United States Sentencing Commission, Bolden asserts, which suggests an early offender can reasonably be deterred by a lengthy initial federal sentence. Finally, Bolden contends the district court over-relied on the Guidelines because it presumed the advisory range generated a correct or reasonable sentence. Bolden argues his lack of criminal history was not adequately represented by his life sentence.

We review the district court's sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007). We presume a sentence within the guidelines range is reasonable and the burden is on a defendant to show his sentence should have been lower considering the factors enumerated in 18 U.S.C. § 3553(a). United States v. Milk, 447 F.3d 593, 603 (8th Cir. 2006). "An abuse of discretion may occur when (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Kane, 552 F.3d 748, 752 (8th Cir. 2009).

As an initial matter, Bolden's sentence is within the Guidelines range, and we therefore accord it a presumption of reasonableness. Id.; see also United States v. Turbides-Leonardo, 468 F.3d 34, 41 (1st Cir. 2006) ("It will be the rare case in which a within-the-range sentence can be found to transgress the parsimony principle."). However, Bolden argues the district court also presumed the sentence calculated under the Guidelines was reasonable. It is impermissible for a district court to rely on the presumption of reasonableness to justify imposing a sentence in the Guidelines range. Nelson v. United States, __ U.S. __, 129 S.Ct. 890, 891 (2009). Bolden bases his argument on the district court's conclusion, "the Court finds no basis to vary downward from the advisory Guideline range." However, this language, taken in context, indicates the district court considered the evidence placed before it in favor of a variance and concluded none was warranted. The statement does not demonstrate the district court presumed the advisory Guidelines range was reasonable.

Bolden also argues the district court erred when it failed to take into account a sentencing study he presented, indicating a long sentence would adequately serve the purpose of deterrence and he was unlikely to reoffend after a long prison term. The district court mentioned the study in its sentencing, but it indicated it believed the best predictor of recidivism in this case was its individualized assessment regarding the defendant's conduct. The district court's ultimate rejection of the study, after consideration of Bolden's argument, was not an abuse of discretion because the district court was not required to accept the study's findings.

Similarly, Bolden asserts his sentence was in disparity with the sentences of his coconspirators. While the terms of the sentences were similar, Bolden argues he should have received a lower sentence because the two individuals he compares himself with had two prior felony drug convictions each, while Bolden had a limited criminal history. However, the court clearly discussed these factors in its sentencing:

-13-

I also have worked hard to make sure that the sentence that I am imposing today avoids unwarranted sentence disparities among defendants with similar records found guilty of similar conduct. And as Mr. Swift talked about, the folks whose names were mentioned or who testified in the Bolden and Benjamin trial, the Court feels that the sentence that will be imposed will not create unwarranted sentence disparities. Mr. Bolden's role in the offense, his drug quantity, the fact that he did not get the three-level decrease for acceptance of responsibility, make me feel that this has been totally consistent and that he's not being punished more severely than anyone who is similarly situated as he is who has been found guilty of similar conduct.

Sent. Tr. at 68. The district court also considered Bolden's age and education at the time of sentencing. Moreover, the district court found, based on information not objected to in the PSIR, he had convictions for possession of marijuana, resisting and eluding police, and possession of a controlled substance. The district court also found Bolden had never spent more than three or four days in jail, but it took into account other criminal conduct relating to possession of an assault rifle. Finally, the district court found Bolden was an abuser of alcohol and street drugs and, though he has had legitimate employment, most of Bolden's income came from selling street drugs.

After careful review of the record, it is clear the district court considered and weighed the relevant sentencing factors under 18 U.S.C. § 3553(a). United States v. Tobacco, 428 F.3d 1148, 1151 (8th Cir. 2005) (acknowledging a presumptively reasonable sentence within the Guidelines range may still be unreasonable if the district court fails to consider a relevant factor, gives significant weight to an improper factor, or commits a clear error of judgment in weighing the factors). The district court did not abuse its discretion by imposing the sentence calculated under the Guidelines and its sentence was not unreasonable.

## VI

For the foregoing reasons, we affirm the convictions and sentences in all respects.

_____