# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3410

_____

United States of America

*Plaintiff - Appellee*

v.

Crispin Herra-Herra

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 11, 2017
Filed: June 27, 2017

_____

Before RILEY, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Crispin Herra-Herra appeals his conviction, following a jury trial for conspiracy to distribute methamphetamine. Herra-Herra also appeals his 151-month sentence as substantively unreasonable. We affirm the district court.[1]

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

## I.   BACKGROUND

The evidence at trial established that federal agents discovered Herra-Herra's involvement in a methamphetamine distribution conspiracy while investigating a particular Mexico-based drug trafficking organization. By virtue of a tracking device that was placed on a co-conspirator's vehicle, as well as a "ping" tracking device for the phone of another co-conspirator, officers discovered that Herra-Herra was involved in a multi-layered conspiracy to distribute multiple pounds of methamphetamine into the Omaha area. Herra-Herra arrived in Omaha in November 2014, shortly before his arrest in December 2014. In the short time Herra-Herra was in Omaha prior to his arrest, he helped to maintain a stash house on Lawndale Drive. Drug-packaging paraphernalia was found during a search of the house, and several pounds of methamphetamine were found buried in the back yard. Surveillance indicated that Herra-Herra had access[2] to the inside of this house, and he was there by himself at least once. Surveillance pictures showed Herra-Herra and another co-conspirator shoveling snow at the Lawndale house.

On December 9, 2014, Herra-Herra and a co-conspirator spent about two hours in another house, believed by law enforcement to be Herra-Herra's residence, at 3706 Q Street in Omaha. The co-conspirator was carrying a child's backpack over his shoulder when he arrived, and he later left with the same backpack. About an hour later, the co-conspirator was arrested during a traffic stop, and officers recovered approximately $169,000 of shrink-wrapped, taped, and rubber-banded bundles from the backpack. When officers conducted a search, pursuant to a warrant, of Herra-Herra's residence on Q Street later that same day, they found a vacuum sealing machine, bags, and tape, similar to the materials used to package the $169,000 in

---

[2]In its brief, the government states on more than one occasion that Herra-Herra had a key to the stash house on Lawndale, but our review of the trial transcript indicates no testimony to that effect, and the government has not pointed us to any such evidence in the record.

currency. There was also evidence that Herra-Herra used and owned multiple phones, which an agent testified was indicative of drug-dealing activity. All of the foregoing circumstantial evidence was established by way of testimony from three case agents, a co-conspirator, and the landlord who owned one of the houses used in the conspiracy.

The case was tried before a jury on February 16 and 17, 2016. The jury received the case at 2:52 p.m. on February 17, and ended the day without a verdict, but resumed deliberations on February 18. Shortly before 3:00 p.m. on February 18, the jury submitted the following question: "What happens if we don't come to a verdict?" The district court gave counsel the option of giving an Allen[3] charge or instructing the jury that if it could not come to a verdict, the government would decide whether to retry the defendant or dismiss the case. The government voted for the former and Herra-Herra advocated for the latter. The court gave the jury the latter instruction. Shortly thereafter, at 3:25 p.m., the jury informed the court it was deadlocked. The court asked counsel if they preferred an Allen charge or for it to declare a mistrial. Again, the government chose the former and Herra-Herra chose the latter. Noting that the jury had been out twenty-four hours after a day-and-a half trial, the court chose to give the jury an Allen charge. After the Allen charge, the jury returned a guilty verdict at 10:10 a.m. the next morning, February 19. The jury deliberated for roughly three hours after receiving the Allen charge.

At sentencing, the presentence investigation report found Herra-Herra responsible for 25.3 kilograms of methamphetamine, but the district court held Herra-Herra responsible for only 11.7 kilograms, resulting in a Guidelines sentencing range of 151 to 188 months. Herra-Herra asked the district court to depart to the mandatory minimum of 120 months, but the district court declined the request and sentenced Herra-Herra to the bottom of the range, 151 months in prison. Herra-Herra appeals,

_____

[3]Allen v. United States, 164 U.S. 492 (1896).

arguing the district court erred in giving the Allen charge and failing to declare a mistrial; that there was insufficient evidence to support his conviction; and that his sentence was unreasonable.

## II.    DISCUSSION

### A.    Jury Deliberations

"An Allen-charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." United States v. Walrath, 324 F.3d 966, 970 (8th Cir. 2003) (quoting United States v. Glauning, 211 F.3d 1085, 1086 n.2 (8th Cir. 2000)). An Allen charge is neither inherently coercive nor prejudicial. United States v. Aldridge, 413 F.3d 829, 832 (8th Cir. 2005). Nor does a defendant have a right to an instruction telling the jury of a right to reach no decision. United States v. Arpan, 887 F.2d 873, 876 (8th Cir. 1989) (en banc). An Allen charge is allowable so long as the instruction is not impermissibly coercive, which is determined by (1) the instruction's content; (2) the length of the deliberation after the instruction; (3) the total length of deliberations; and (4) any other indicia of coercion. Walrath, 324 F.3d at 970. Although Herra-Herra asked that the district court declare a mistrial instead of giving the Allen charge, the government alleges that Herra-Herra did not object to the Allen charge at the time it was given and we should review for plain error. Having examined the transcript, we are not as sure as the government about Herra-Herra's lack of objection, as his counsel twice voiced his preference for the options other than the Allen charge. On the other hand, counsel did not object further when the district court announced that it would, indeed, give the Allen charge. Nonetheless, because the ultimate outcome is not affected by our standard of review, we will review this matter for an abuse of discretion. Id.

Herra-Herra challenges the second and third Walrath factors. The jury deliberated approximately three hours following the Allen instruction. Herra-Herra

-4-

contends such a time span is "more significant" than other cases where this court has found no coercion, and cites cases where the juries deliberated less than an hour following the charge. E.g., United States v. Dawkins, 562 F.2d 567, 570 (8th Cir. 1977) (holding that a mere 45 minutes of deliberation demonstrated a lack of coercion). However, in United States v. Whatley, 133 F.3d 601, 604-05 (8th Cir. 1998), we found that a deliberation time of four hours after giving the charge showed that the jury carefully considered the case rather than arriving at its conclusion because of coercion. Under the circumstances of the instant case, we find that the roughly three hours of deliberation subsequent to the instruction does not indicate coercion. Glauning, 211 F.3d at 1087 ("The jury's two hours of deliberation after the charge . . . raises no inference of coercion.").

Herra-Herra also takes issue with the jury's total deliberation time, approximately twelve hours for a one-and-a-half-day trial. He contends this demonstrates the charge had a coercive effect on the jury. However, in Glauning we found that sixteen to eighteen hours of deliberation time for a two-day trial, in the absence of any other evidence of coercion, demonstrated that the charge was not coercive. Id. at 1086-87. The amount of total deliberation time here (twelve hours) demonstrates that the jury carefully considered the case. On that basis, we again find that the Allen charge was not impermissibly coercive, and the district court did not abuse its discretion in giving the charge as opposed to granting a mistrial as requested by Herra-Herra.

B.      Sufficiency of the Evidence

Herra-Herra next argues there was insufficient evidence to support his conviction and specifically argues the government only showed he was guilty of associating with bad actors. We review the sufficiency of the evidence to sustain a conviction de novo, viewing the evidence in the light most favorable to the jury's verdict, drawing all reasonable inferences in favor of the verdict and reversing only

if no reasonable jury could find all the elements beyond a reasonable doubt. United States v. Cole, 721 F.3d 1016, 1021 (8th Cir. 2013). In order to convict Herra-Herra of conspiracy to distribute methamphetamine, the government needed to prove that (1) a conspiracy existed; (2) Herra-Herra knew of the conspiracy; and (3) he intentionally became a part of the conspiracy. United States v. Ruiz-Zarate, 678 F.3d 683, 689 (8th Cir. 2012). To establish the existence of a conspiracy the government must prove that there was an agreement among individuals to accomplish an illegal purpose. United States v. Crossland, 301 F.3d 907, 913 (8th Cir. 2002). Circumstantial evidence alone can prove the existence of the agreement, and an express agreement is unnecessary–a conspiracy may consist of simply a tacit understanding. Id.

Although the evidence was far from overwhelming because Herra-Herra had arrived on the scene approximately three weeks before being arrested, there was sufficient evidence for the jury to find Herra-Herra guilty of the charged conspiracy. He had access to, and helped maintain, the stash house where three pounds of methamphetamine were found buried in the backyard. There was sufficient evidence for the jury to find that Herra-Herra assisted a co-defendant in wrapping and packaging approximately $169,000 in methamphetamine proceeds. At the house where Herra-Herra was living, agents found materials used to package the currency. Herra-Herra used and owned multiple phones, as is typical of a person involved in drug distribution. The jury considered Herra-Herra's arguments that the government was trying to convict him of guilt by association and rejected them. Given our standard of review, there was enough circumstantial evidence at trial to establish that there was a drug conspiracy, that Herra-Herra knew of the conspiracy, and that he intentionally became a part of it.

## C. Sentence

Herra-Herra challenges the substantive reasonableness of his sentence. We review sentences under the abuse-of-discretion standard. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "[I]t will be the unusual case when we reverse a district court sentence–whether within, above, or below the applicable Guidelines range–as substantively unreasonable." Id. at 464 (quoting United States v. Gardellini, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). Sentences within the advisory Guidelines range are presumed reasonable, however. United States v. San-Miguel, 634 F.3d 471, 475 (8th Cir. 2011). This presumption is rebuttable, but the burden is on a defendant to show his sentence should have been lower considering the factors enumerated in 18 U.S.C. § 3553(a). United States v. Bolden, 596 F.3d 976, 984 (8th Cir. 2010).

The 151-month sentence, within the advisory Guidelines range, is presumptively reasonable on appeal and nothing in the record rebuts this presumption. The district court considered and denied Herra-Herra's request for a below-Guidelines sentence. Although his sentence is higher than some of his co-conspirators, he was the only co-conspirator not to make a plea deal with the government and his sentence does not result in an unwarranted disparity. He has failed to show the district court abused its discretion by sentencing him to 151 months in prison.

## III. CONCLUSION

We affirm the district court.

_____