# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2493

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| America Yegile Haileselassie, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: December 14, 2011
Filed: February 27, 2012

_____

Before LOKEN, BRIGHT, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

America Haileselassie sent the Bettendorf, Iowa Police Department an envelope containing white powder and a letter reading: "Detective Bryan Payton; You are a Dead MeaT; I will kill you all You son of a Bitch!; Enjoy the Anthrax Spores!" The Iowa State Hygienic Lab (the "State Lab") determined that the powder was a blend of baby powder and carpet cleaner, and investigators traced the letter to Haileselassie. He pleaded guilty to mailing a threatening communication in violation of 18 U.S.C. § 876(c) and was sentenced to 21 months in prison. He appeals the district court's order that he pay restitution in the amount of $1,401.44 to the State Lab. We agree with the district court that 18 U.S.C. § 876(c) is a crime of violence

within the meaning of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, and that the State Lab can be a victim under the MVRA. However, as the government failed to prove the amount of actual loss, we reverse the restitution order.

## I. Crime of Violence

The MVRA provides that a defendant who commits a qualifying offense must pay restitution to a victim who was "directly and proximately harmed" by the offense. 18 U.S.C. §§ 3663A(a)(1)-(2). Qualifying offenses include a crime of violence, as defined in 18 U.S.C. § 16, in which an identifiable victim suffers a pecuniary loss. § 3663A(c)(1)(A)-(B). A crime of violence includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." 18 U.S.C. § 16(a). Haileselassie argues that 18 U.S.C. § 876(c) is not a crime of violence.

Under the categorical approach to this issue mandated by Leocal v. Ashcroft, 543 U.S. 1, 7 (2004), "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, involves the use, attempted use, or threatened use of physical force against the person of another." United States v. Forrest, 611 F.3d 908, 910 (8th Cir. 2010) (quotation omitted). A violation of § 876(c) requires proof that the defendant knowingly mailed a communication "addressed to any other person and containing any threat to kidnap any person or any threat to injure the person." See United States v. Mabie, 663 F.3d 322, 333-34 (8th Cir. 2011). In United States v. Left Hand Bull, 901 F.2d 647, 649 (8th Cir. 1990), we held that the element requiring proof of a threat to kidnap or to injure another person "falls squarely within the definition of a crime of violence contained in 18 U.S.C. § 16." Left Hand Bull is controlling precedent binding on our panel unless, as Haileselassie argues, it "has been eroded by subsequent Supreme Court precedent."

First, Haileselassie argues that <u>Begay v. United States</u>, 553 U.S. 137 (2008), which construed the term "violent felony" in 18 U.S.C. § 924(e)(2)(B)(ii), established that merely mailing a threatening letter does not involve sufficiently "purposeful, violent, and aggressive conduct" to constitute a "crime of violence" under § 16(a). After briefs were submitted, we squarely rejected this contention in <u>United States v. Tessmer</u>, 659 F.3d 716, 717-18 (8th Cir. 2011), because the driving-under-the-influence statute at issue in <u>Begay</u>, unlike § 876(c), did not require proof of direct threats of force against another person. <u>See</u> N.M. Stat. Ann. § 66-8-102.

Second, Haileselassie argues that <u>Leocal</u> and <u>Johnson v. United States</u>, 130 S. Ct. 1265 (2010), eroded <u>Left Hand Bull</u>. Those cases construed the term "physical force" as used in both § 16(a) and § 924(e)(2)(B)(i) to mean "*violent* force-that is, force capable of causing physical pain or injury to another person." <u>Johnson</u>, 130 S. Ct. at 1271. In both cases, the Supreme Court dealt with offenses involving the *use* of force. "We do not deal here," the Court noted, "with an *attempted* or *threatened* use of force." <u>Leocal</u>, 543 U.S. at 8-9. Thus, these decisions stand for the unsurprising proposition that it is the "physical force" used that must be "violent," not the means by which a "threat" of physical force is conveyed (here, mailing). As an element of § 876(c) is the threat to use force that in the ordinary case is violent physical force -- "injuring" or "kidnapping" -- <u>Leocal</u> and <u>Johnson</u> in no way "eroded" <u>Left Hand Bull</u>.

Finally, Haileselassie contends that we wrongly decided <u>Left Hand Bull</u> because "injuring" and "kidnapping" do not *necessarily* involve the violent physical force § 16(a) encompasses. He cites threats to use pathogens, poison, or smoke as examples of insufficiently violent force. The contention is factually dubious, as well as contrary to a categorical approach to the elements of the § 876(c) offense. In any event, Left Hand Bull decided this issue and is binding on our panel.

## II. Actual Loss to a Victim

At sentencing, the government requested $1,401.44 in restitution payable to the State Lab. It based this request on a paper-thin evidentiary record, namely, the description of Haileselassie's offense conduct in his Presentence Investigation Report (PSR), to which there was no objection, plus Government Exhibit No. 1, a "cost estimate" from the State Lab reporting that its testing of "the specimen received from the Bettendorf Police Department" required eighteen hours of staff time valued at $1,325.44, and the use of $76 in consumables. Haileselassie opposed the award, arguing both that § 876(c) is not a crime of violence for restitution purposes, and that the expenses in question were merely the cost of government investigation, similar to lab expenses routinely incurred in prosecuting drug offenses. Without addressing this second contention, the district court ordered the full amount of restitution the government requested because Haileselassie's offense conduct "was the direct cause of [the State Lab's] $1,401.44 expenditure for testing."

Although for many years the issue was in doubt, it is now firmly established that a unit of government directly and proximately harmed by a qualifying offense can be awarded restitution under the MVRA. See, e.g., United States v. Senty-Haugen, 449 F.3d 862, 865 (8th Cir. 2006). "Congress intended that restitution be a compensatory remedy from the victim's perspective. Therefore, government agencies, like private MVRA victims, should be limited to compensation for their actual losses." United States v. Petruk, 484 F.3d 1035, 1038 (8th Cir. 2007). The government bears the burden of proof on these restitution issues. United States v. Chalupnik, 514 F.3d 748, 752 (8th Cir. 2008).

At least two of our sister circuits have approved the award of restitution for costs the government incurred when a defendant created a legitimate fear that anthrax had been mailed or delivered to a government facility. United States v. De La Fuente, 353 F.3d 766 (9th Cir. 2003); United States v. Quillen, 335 F.3d 219 (3d Cir. 2003).

We agree with those decisions. The cost of determining if an imminent threat to the safety of government workers or operations exists is a true involuntary victim cost directly and proximately caused by this type of offense. As the district court reasoned, "the mailing of the purported anthrax with a threatening letter -- was the direct cause of [the State Lab's] expenditure. The agency's response . . . was also the necessary and foreseeable result of that conduct."

However, it is well-settled that "[t]he costs of investigating and prosecuting an offense are not direct losses for which restitution may be ordered." United States v. Salcedo-Lopez, 907 F.2d 97, 98 (9th Cir. 1990); see United States v. Menza, 137 F.3d 533, 539 (7th Cir. 1998), and cases cited. The government and the district court erred by failing to consider this principle in awarding restitution in this case. The PSR recited, "the letter [sent by Haileselassie to the Bettendorf Police Department] was tested for anthrax, but no units of anthrax were located in the powder. *Further analysis* of the powder determined it could have come from a mixture of carpet and baby powder, similar to the powder seized from Haileselassie's room." (Emphasis added.) This passage makes clear what common sense suggests -- that it did not take the State Lab's staff eighteen hours to determine there was no anthrax threat. Rather, after making that determination, the State Lab, no doubt at law enforcement's sensible request, went on to analyze the powder mailed with the threat for purposes of gathering evidence in the criminal investigation. If that sequence of events occurred, the latter costs were not an involuntary victim loss. They were a voluntary cost of criminal investigation for which restitution may not be ordered.

Some government investigative costs are actual losses properly included in a restitution award, such as the site investigation needed to design an appropriate environmental cleanup plan in United States v. Phillips, 367 F.3d 846, 862-64 (9th Cir. 2004). Because distinguishing between this type of costs and costs "routinely incurred prosecuting criminal cases" is fact-intensive, the Ninth Circuit vacated the restitution order in Phillips. Id. at 864. Here, the government offered no evidence

permitting the district court (or this court) to separate the restitution wheat from the chaff in Government Exhibit No. 1. In addition, the government offered no evidence clarifying whether the "estimates" of staff costs in Exhibit No. 1 reflected the State Lab's internal labor costs, which would be a legitimate measure of actual loss, or the external billing rates for these staff professionals, which might well be consequential damages that must be excluded from any award. As the Seventh Circuit said in rejecting similar proof in <u>Menza</u>, 137 F.3d at 539, "general invoices . . . ostensibly identifying the amount" of loss without further explanation are insufficient. Accordingly, the order of restitution must be reversed.

The judgment of the district court is reversed, and the case is remanded with directions to enter an amended Judgment in a Criminal Case that eliminates the obligation to pay restitution.

_____