# United States Court of Appeals
### For the Eighth Circuit

_____

## No. 12-1617
_____

United States of America

*Plaintiff - Appellee*

v.

Adekunle Olufemi Adetiloye

*Defendant - Appellant*

_____

## No. 12-1919
_____

United States of America

*Plaintiff - Appellant*

v.

Adekunle Olufemi Adetiloye

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: December 12, 2012
Filed: May 3, 2013
_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.
_____

BYE, Circuit Judge.

Adekunle Adetiloye pleaded guilty to one count of mail fraud. The district court sentenced him to 214 months of imprisonment. He raises four sentencing issues on appeal. The government cross-appeals, contending the district court improperly denied restitution to nearly all of the individual and institutional victims of Adetiloye's fraud scheme and miscalculated the value of property Adetiloye was required to forfeit because of the scheme. We affirm Adetiloye's sentence but vacate the restitution and forfeiture orders and remand to allow the parties to present more detailed evidence regarding the amount of loss the victims sustained and the value of the property Adetiloye gained from the scheme.

I

In March 2004, someone identifying himself as Donald Douglas obtained corporate status and a business license in Delaware for a company called Syspac Financial Services, Inc. ("Syspac"). With this license, Syspac bought subscriptions to ChoicePoint, LexisNexis, and Investigative Professionals ("IP"), commercial databases which maintain confidential personal information about individuals and entities in the United States. These companies allow only certain organizations, including law enforcement, financial companies, and debt collectors, to access their databases. Syspac gained access by falsely representing itself as a debt collection company. "Donald Douglas" and Syspac used the databases to conduct searches and view the protected personal information of thousands of people. A second company,

Commet Consultant, Inc. ("Commet"), was opened by "Craig Kobrin" and performed similar searches. Donald Douglas and Craig Kobrin are real people, but neither of them is involved in the debt collection business. Each had his identity stolen and used to further the scheme.

Using the personal information obtained in these searches, Adetiloye opened approximately 500 fraudulent accounts, in the form of credit cards and balance transfer checks. To receive these cards and checks, Adetiloye opened approximately 130 Commercial Mail Receiving Agency ("CMRA") boxes, which are commercial mailboxes some people use as an alternative to government-operated mail service. The CMRAs had no real purpose. Instead, they created the illusion the supposed new bank or credit card customers lived in various locations throughout the United States.

The scheme worked in the following way. When Adetiloye first applied for the credit cards and other bank accounts, he would intentionally misstate the actual address of the person whose identity he had stolen. Once sent to the incorrect address, the newly-opened account documentation would be returned to the sender as undeliverable. Then, Adetiloye would contact the bank to explain the "mistake" and request a new card be sent to the "correct address," a CMRA in the United States. No one picked up mail from these CMRAs. Instead, Adetiloye provided directions for the mail to be forwarded to one of a group of CMRAs in Toronto. Adetiloye used the cards and accounts to withdraw cash, make purchases, and transfer funds between the accounts.

In 2007, Postal Inspector Matthew Hoffman received an anonymous email tip stating a group of Nigerians was running a fraud scheme in Toronto. That same year, Syspac's Delaware business license expired and required renewal. Hoffman sent a "ruse" letter to "Donald Douglas" purporting to require a Syspac employee to complete an updated state registration form to avoid suspension of its business license.

"Donald Douglas" completed the form and listed a return address in Toronto. The return envelope containing the form revealed Adetiloye's fingerprints.

Adetiloye was first arrested by Canadian police on December 1, 2007, after he had just picked up a large amount of mail from a CMRA. Police searched Adetiloye's vehicle and discovered credit cards, letters, packages, bank statements, check stock, and bills in the names of many different people. Adetiloye also possessed a receipt for a CMRA in Toronto which matched the return address of the FedEx envelope in which "Donald Douglas" returned the Delaware registration form. Finally, Adetiloye had two cellular phones. Investigators traced the calls made from these phones and discovered they had made more than 130 calls to banks in the month prior to Adetiloye's arrest. Many of these calls were recorded. Hoffman listened to them, as did Gregory Krier, the head of U.S. Bank's credit card fraud investigation team. Hoffman and Krier concluded the calls from the phone were all made by the same person. The record shows Adetiloye made the calls.

Adetiloye was arrested for the second time on August 26, 2009. On February 9, 2011, he pleaded guilty to one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2, and a forfeiture allegation pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(3), and 28 U.S.C. § 2461(c). The district court conducted a three-day evidentiary sentencing hearing. On January 18, 2012, the court issued a seventeen-page sentencing memorandum explaining its guidelines calculation. On January 23, 2012, the court sentenced Adetiloye to 214 months' imprisonment.

After the parties failed to agree on restitution and forfeiture amounts, the court held another hearing. The government presented evidence already in the record and asked for $743,948.42 in restitution for sixty-five victims and $743,948.42, representing the proceeds of Adetiloye's illegal conduct, in a forfeiture money judgment. The court expressed concern the government's documents did not contain any itemization or explanation of what money the victims had actually lost. Unwilling

to indulge speculative evidence, the court entered a restitution order of $1,659.72. This figure represented the total loss of the three victims who, according to the court, sufficiently documented their claims. The court entered a forfeiture order in the same amount.

Adetiloye appeals four sentencing issues. He contends the district court (1) did not adequately explain its sentence; (2) improperly granted only a one-level reduction for acceptance of responsibility pursuant to United States Sentencing Guidelines ("U.S.S.G.") Manual § 3E1.1; (3) erred in imposing a four-level leadership enhancement pursuant to U.S.S.G. § 3B1.1(a); and (4) erroneously applied a two-level upward departure for an offense level which understates the seriousness of the offense pursuant to U.S.S.G. § 2B1.1 cmt. n.19(A). The government appeals the restitution and forfeiture orders.

II

A. Explanation of Sentence

Adetiloye argues the district court committed reversible procedural error by failing to adequately explain its factual determinations related to Adetiloye's sentence, including the time frame and scope of Adetiloye's involvement in the scheme, the amount of loss, and the number of victims. We review the procedural soundness of a sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007).

The district court is required to provide some explanation of its consideration of the 18 U.S.C. § 3553(a) factors. Rita v. United States, 551 U.S. 338, 356-57 (2007). But the district court is not obligated to make a specific finding regarding every fact which underlies a defendant's sentence. See United States v. Perkins, 526 F.3d 1107, 1110 (8th Cir. 2008); United States v. Franklin, 397 F.3d 604, 606 (8th Cir. 2005) (quotation and citation omitted). "To 'properly analyze[] the relevant

sentencing factors,' a district court . . . must 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" United States v. Robinson, 516 F.3d 716, 718 (8th Cir. 2008) (quoting Rita, 551 U.S. at 356). Adetiloye's argument, which insists upon a more exhaustive fact-finding responsibility of the district court, misstates the law.

We are satisfied the district court had a reasoned basis for concluding as it did. The court issued a seventeen-page sentencing memorandum in which it analyzed the evidence and explained its guidelines calculations. Moreover, at the sentencing hearing, the court thoroughly considered the § 3553(a) factors. Tr. 629-35. The nature of Adetiloye's scheme was sophisticated and large in scope. He did not comply with court orders, tried to obfuscate the prosecution despite pleading guilty, and generally showed a lack of remorse. The court further explained that although Adetiloye had no criminal history, the need for general deterrence of criminal conduct of this sort is significant. This analysis is sufficient to satisfy the standard set forth in Rita. The district court did not procedurally err in calculating Adetiloye's sentence.

B. Acceptance of Responsibility

Adetiloye argues the district court erred when granted only a one-level reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1. Adetiloye contends he is entitled to a two-level reduction.

"We review the district court's denial of an acceptance of responsibility reduction for clear error." United States v. Smith, 665 F.3d 951, 957 (8th Cir. 2011). Clear error exists when the court is left "with the definite and firm conviction that a mistake has been committed." United States v. Lalley, 257 F.3d 751, 758 (8th Cir. 2001) (quotation and citation omitted). The defendant bears the burden of proving he deserves a reduction, United States v. Fischer, 551 F.3d 751, 754 (8th Cir. 2008)

(quotation and citation omitted), and a guilty plea does not guarantee he will receive one. U.S.S.G. § 3E1.1 cmt. n.3; United States v. Canania, 532 F.3d 764, 772-73 (8th Cir. 2008). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 cmt. n.5.

At the outset, we observe Adetiloye misunderstands the source of the offense level reduction. The district court provided no acceptance of responsibility reduction whatsoever. Sent. Tr. 610 ("The Court is strongly convinced that the defendant is not entitled to acceptance of responsibility given the way that this matter played out and given the proof that the government was put to."). Instead, the court granted Adetiloye a one-level downward variance for pleading guilty and thereby saving the government the cost of trying the case. Id. Accordingly, we review the district court's denial of any reduction for acceptance of responsibility, rather than granting solely the one-level reduction that Adetiloye claims.

Section 3E1.1 provides, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." "[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.1(A). The district court denied the reduction because Adetiloye contested factual statements and nearly all applicable enhancements in the Presentence Investigation Report (PSR). We agree. After pleading guilty, Adetiloye continued to deny, among other things, that (1) his was the voice on the recorded phone calls to banks; (2) he continued to engage in the scheme after being arrested by Canadian police in December 2007; and (3) he opened credit cards, requested balance transfer checks, and wrote balance transfer checks payable to fictitious businesses. The record plainly contradicts Adetiloye's asserted non-involvement. Given this

conduct, we cannot say the district court clearly erred in denying Adetiloye a reduction for acceptance of responsibility.[1]

C. Leadership Enhancement

Adetiloye argues the district court improperly applied a four-level enhancement for his leadership role in the offense. He contends the evidence shows only that he was a member—not an organizer or leader—of the mail fraud scheme.

We review a district court's factual findings supporting a leadership enhancement for clear error and its legal conclusions de novo. United States v. Williams, 605 F.3d 556, 570 (8th Cir. 2010) (quotation and citation omitted). The government must prove a leadership enhancement is warranted by a preponderance of the evidence. United States v. Garcia-Hernandez, 530 F.3d 657, 665 (8th Cir. 2008).

Section 3B1.1(a) mandates a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." When a court determines whether a defendant is an organizer or leader, it considers the following non-exclusive set of factors:

---

[1]The district court also denied a reduction because Adetiloye deliberately altered his handwriting to frustrate comparison between handwriting samples obtained during the investigation and court-ordered handwriting samples. Adetiloye argues the altered handwriting, if indeed it did occur, took place before he pleaded guilty, and pre-plea conduct may not be used as a basis to deny an acceptance of responsibility reduction. Because Adetiloye's frivolous denial of relevant and true conduct alone justifies the denial, we need not consider this argument. For the same reason, we do not consider Adetiloye's argument that denying a reduction despite non-frivolous challenges to relevant conduct "violate[s] [his] procedural due process right to contest the government's allegations." Appellant's Br. 60.

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. §3B1.1 cmt. n.4. We interpret the terms "organizer" and "leader" broadly. United States v. Bolden, 596 F.3d 976, 983 (8th Cir. 2010). For a defendant to be an organizer or leader, he need only direct one other participant. United States v. Rodriguez-Ramos, 663 F.3d 356, 365 (8th Cir. 2011) (quotation and citation omitted).

Adetiloye does not contest that the scheme was extensive, and accordingly, we examine only whether he directed one other participant in the scheme. The record suggests he did. Adetiloye was recorded trying to resolve an issue regarding a company's access to IP. Thereafter, an unidentified man, who undisputedly is not Adetiloye, mailed a $500 check to IP from Brooklyn, New York. Later that day, Adetiloye, posing as Donald Douglas, left a message for IP stating the money had been sent and should arrive the next day. The clear inference is Adetiloye directed another person to send the money from a U.S. address to avoid arousing suspicion by sending from Canada money supposedly on behalf of a U.S. company. Moreover, Postal Inspector Hoffman testified that after Adetiloye was arrested in 2007 and many of the CMRAs in Canada were shut down, the mail began to be forwarded to a new address in London. The record shows Adetiloye directed Clement Akande, a friend whom Adetiloye had known for approximately fifteen years, to receive and hold mail for Adetiloye at Akande's London address. This evidence provides a sufficient basis to conclude Adetiloye was a leader or organizer in the scheme. The district court did not clearly err when it so concluded.

D.  Upward Departure

Section 2B1.1 cmt. n.19(A) authorizes an upward departure in "cases in which the offense level determined under this guideline substantially understates the seriousness of the offense."  The district court increased Adetiloye's offense level by two pursuant to this section because the scheme caused great non-monetary loss, requiring victims to spend hours reclaiming their identities and repairing their credit records.  The offense also created a significant risk of monetary loss beyond that which the court actually found.  Adetiloye challenges the departure.  "We review the district court's factual findings supporting a departure for clear error and the reasonableness of a permissible departure for abuse of discretion."  United States v. Nossan, 647 F.3d 822, 825 (8th Cir. 2011) (internal quotation and citation omitted).

Adetiloye argues the district court erred when it departed by adding offense levels to create a higher sentencing range, rather than establishing a range and departing by sentencing above it.  He claims sentencing in such a way violates Federal Rule of Criminal Procedure 32(h), which provides, "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure."  The crux of Adetiloye's argument is the district court's method of departing ensured the court would sentence within the guideline range and not need to provide notice.  This argument is misplaced for two reasons. First, we have previously approved departures by adding offense levels.  See United States v. Sayre, 400 F.3d 599, 600-01 (8th Cir. 2005) (affirming a sentence which included a four-level upward departure).  Second, even if district courts could not depart by adding offense levels, the district court was not required to provide separate notice under Rule 32(h) in this case because the PSR already listed § 2B1.1 cmt. n. 19(A) as a ground for departure.  See PSR 21.

Therefore, the parties were on notice that the court could consider an upward departure on that ground. Adetiloye's argument is without merit.[2]

## III

As noted, the government requested restitution and forfeiture in the amount of $743,948.42, of which $688,928.29 was to be paid to banks and other entities, and $55,020.13 was to be paid to individuals. The district court entered a restitution order and forfeiture order of $1,659.72, substantially below the requested amount. The government appeals the two orders.

## A. Restitution

"We review the district court's decision to award restitution for an abuse of discretion and the district court's finding as to the amount of loss for clear error." United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011).[3] We review de novo any

_____

[2]We likewise reject Adetiloye's frivolous argument the district court violated the Ex Post Facto Clause when it supposedly held him responsible for additional victims under a definition of "victim" that became effective after the offense conduct took place. Compare U.S.S.G. § 2B1.1 cmt. n.1 (2008) (defining "victim" as any person who sustained "actual loss" or "bodily injury" as a result of the offense), with U.S.S.G. § 2B1.1 cmt. n.4(E) (2009) (adding as a "victim" "any individual whose means of identification was used unlawfully or without authority"). Adetiloye overlooks the fact that the district court did not depart upward because of the number of victims, but rather because of the risk of monetary loss and actual non-monetary loss caused by the scheme.

[3]Adetiloye claims we should review the decision to award restitution for plain error because the government "failed to object" to the restitution order. This is not so. The PSR did not recommend a specific restitution award and the district court did not consider restitution at sentencing. Thus, because the government had no opportunity to object in the first place, it cannot have failed to do so. United States v. Chaika, 695 F.3d 741, 747-48 (8th Cir. 2012).

-11-

legal interpretations the court made when determining its obligation to award restitution.  Id.

The Mandatory Victims Restitution Act ("MVRA") provides that a sentencing court "shall order" a defendant convicted of "an offense against property under this title, . . . including any offense committed by fraud or deceit[,]" to pay restitution to a "victim of the offense."  18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii).  A "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."  Id. § 3663A(a)(2).  The government must prove restitution is warranted by a preponderance of the evidence.  Id. § 3664(e).  General invoices which purport to indicate the amount of the loss but do not provide further explanation are an insufficient method of proof.  United States v. Haileselassie, 668 F.3d 1033, 1037 (8th Cir. 2012) (quotation and citation omitted); United States v. Hartstein, 500 F.3d 790, 796 (8th Cir. 2007); see also United States v. Chalupnik, 514 F.3d 748, 755 (8th Cir. 2008) (stating restitution "may not be based entirely upon speculation" (internal quotation and citation omitted)).  Where, as here, the defendant has objected to the amount of loss attributable to him, the government may meet its burden of proof by introducing testimony from the investigating postal inspector, see United States v. Gibreal, 184 F. App'x 592, 593 (8th Cir. 2006) (per curiam) (unpublished), or a sworn statement from the victim outlining the losses sustained as a result of the crime.  See United States v. Brown, 150 F. App'x 575, 576 (8th Cir. 2005) (per curiam) (unpublished).

The government sought to base the restitution order on exactly such summary tables.  It included as exhibits two tables—one for individual victims and one for institutional victims—which included columns indicating the date of first and last account activity, amount of loss and, in some cases, a brief note describing the loss.  The tables, however, did not include further explanation or itemization.  The court asked the government about this deficiency at the restitution hearing:

The Court:  Courts don't normally order restitution . . . without some itemization.  And what I do know is this, is that all we got back for explanations from inquiries made through pretrial services were checkmarks in boxes and without really any explanation.  And all we've received from you are statements as to the amount claimed without any itemization and what I'm asking you is:  Do you have any itemization for any of these numbers?

Attorney:  No, Your Honor, we have what you have.

The Court:  And how could we not be speculative if someone says:  I lost $10,000.  And you sit there and go –

Attorney:  I agree, Your Honor.

The Court:  I mean, there comes a point in time where I can't order restitution on $10,000 without having some explanation as to what it is.

Attorney:  I understand, Your Honor.  And, you know, to the extent if we want to agree to sort of draw that line if you want us to – I totally agree, Your Honor.

Restitution Hr'g Tr. 27-28.  The district court rejected these summary tables as insufficiently specific, stating it was "unable to discern from the summaries how the alleged losses were calculated because the government did not produce any testimony or evidence to support the underlying data contained in the summaries." J.A. 122. After combing through the victim statements compiled by pretrial services, the court found only three statements were sworn under oath and were therefore sufficiently specific and reliable to merit an award of restitution.  The restitution award of $1,659.72 is the total of the amounts to which these three victims swore.

On appeal, the government contends the summary tables are based on evidence previously in the record.  Specifically, they are based on Exhibit 207, a master table of bank accounts and loss amounts compiled from thousands of bank documents. The government further claims the parties stipulated to the accuracy of Exhibit 207, see

Sent. Tr. 286, and the district court acknowledged as much and stated the government need not present any additional evidence. The government should not be penalized for not presenting the required evidence, it argues, when it was told it need not do so.

The record regarding stipulation is unclear. It appears the parties did stipulate regarding the accuracy of Exhibit 207, see id., yet the district court noted in the restitution order that "the defendant has consistently objected to the government's calculation regarding the number of victims and alleged losses," J.A. 121, and the restitution hearing transcript shows a victim-by-victim dispute between the parties. Moreover, the government's claim it was told it did not need to present additional evidence is belied by the restitution hearing exchange cited above, as well as by the fact the district court opened the restitution hearing by asking the government to call its first witness, suggesting it expected to hear testimony. Restitution Hr'g Tr. 3. The government could have obtained sworn victim statements or called Inspector Hoffman to testify, but it did not do so. The government's argument it relied on a supposed representation made by the district court that it need not present additional evidence is unpersuasive.

Nevertheless, we must not lose sight of the purpose of the statute we consider. The MVRA is intended "to assure that victims of a crime receive full restitution." Dolan v. United States, 130 S. Ct. 2533, 2539 (2010); see also United States v. Statman, 604 F.3d 529, 538 (8th Cir. 2010) (quotation and citation omitted). We have observed "[t]he intended beneficiaries of the MVRA's procedural mechanisms are the victims, not the victimizers." United States v. Balentine, 569 F.3d 801, 806 (8th Cir. 2009) (internal quotation and citation omitted). The Supreme Court has reached a similar conclusion. Dolan, 130 S. Ct. at 2540. Our interpretation of the statute must be guided by this substantive purpose, and must "conform to the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." United States v. Montalvo-Murillo, 495 U.S. 711, 718 (1990)

-14-

(internal quotations and citations omitted); see Dolan, 130 S. Ct. at 2539-2541 (citing Montalvo-Murillo and holding a sentencing court that misses the ninety-day post-sentencing deadline to impose restitution still possesses the power to order restitution). Applying these principles to the present case, we believe that despite the government's failure to produce documentation with the required specificity and reliability, the district court should have postponed the restitution proceedings to allow for the gathering and presentation of additional evidence. See 18 U.S.C. § 3664(d)(4) ("After reviewing the report of the probation officer, the court may require additional documentation or hear testimony."). Concluding to the contrary "defeat[s] the basic purpose of the [MVRA]," Dolan, 130 S. Ct. at 2541, by allowing the overwhelming majority of the victims, who bear no responsibility for the government's failure to compile the necessary documentation, to go unremunerated. We cannot permit this outcome.

## B. Forfeiture

Finally, the government challenges the $1,659.72 forfeiture order. We "review . . . factual findings for clear error but apply a de novo standard of review to [the issue] of whether or not those facts render the [asset] subject to forfeiture." United States v. Dodge Caravan Grand SE/Sport Van, VIN No. 1B4GP44G2YB7884560, 387 F.3d 758, 761 (8th Cir. 2004).

The United States may seek forfeiture of "[a]ny property, real or personal, which constitutes or is derived from the proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)." 18 U.S.C. § 981(a)(1)(C). Mail fraud is a "specified unlawful activity." 18 U.S.C. § 1956(c)(7) (incorporating the Racketeer Influenced and Corrupt Organizations (RICO) predicate offenses found in 18 U.S.C. § 1961(1), which include mail fraud); see United States v. Jennings, 487 F.3d 564, 585 (8th Cir. 2007).

"Proceeds" includes "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture." 18 U.S.C. § 981(a)(2)(A).

The amount of the forfeiture order in this case matched exactly the amount of the restitution order. Yet restitution and forfeiture are different concepts. In short, "[r]estitution is loss based, while forfeiture is gain based." United States v. Genova, 333 F.3d 750, 761 (7th Cir. 2003). As such, we cannot agree with the district court that $1,659.72 "represent[s] the proceeds of the criminal scheme during the time of the Defendant's participation." Final Order of Forfeiture 1. Rather, we believe that sum describes exactly what the district court said in its restitution order: the amount of loss proved by the victims at the time the court ordered restitution. We further believe the record clearly shows Adetiloye gained more than $1,659.72 in proceeds from this extensive mail fraud scheme. We must therefore conclude the district court clearly erred when it ordered Adetiloye to forfeit only $1,659.72.

IV

We affirm Adetiloye's sentence, but vacate and remand the restitution orders to allow the parties to present additional evidence regarding the losses the victims sustained and the proceeds Adetiloye gained from the scheme.[4]

_____

---

[4]We deny Adetiloye's request for leave to file a pro se supplemental brief. See Wayne v. Benson, 89 F.3d 530, 535 (8th Cir. 1996) ("[G]enerally[,] we do not consider pro se briefs when a party is represented by counsel."). Adetiloye's motion to strike the government's brief in its entirety is also denied, as are any other pending motions.