# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3952

_____

United States of America

*Plaintiff - Appellee*

v.

Adetokunbo Olubunmi Adejumo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 14, 2016
Filed: February 16, 2017

_____

Before LOKEN, MURPHY, and KELLY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Defendant Adetokunbo Adejumo pled guilty to bank fraud and aggravated identity theft. As part of his sentence he was ordered to pay restitution of almost $500,000, and he appeals. We vacate the restitution order.

## I.

Adejumo was indicted in 2011 on 15 counts charging a scheme to defraud banks and bank customers by use of stolen identities, stolen and fraudulently created bank accounts, counterfeit checks, and fraudulently obtained credit card accounts. He pled guilty to one count of aiding and abetting bank fraud and one count of aiding and abetting aggravated identity theft. His plea agreement required Adejumo to make restitution payments to the victim of his crime, the amount to be determined by the court at sentencing. At sentencing in August 2012, the court ordered Adejumo to pay restitution but did not state the amount.

In August 2013 the government moved for restitution in the amount of $1.1 million. Its motion was granted without Adejumo having received notice of it. He subsequently appealed the restitution award, and we reversed after concluding that the procedure required by 18 U.S.C. § 3664 had not been followed and that the government had not presented sufficient evidence to support the award. United States v. Adejumo, 777 F.3d 1017 (8th Cir. 2015). We remanded to the district court for a restitution hearing.

After an October 2015 hearing, the district court ordered Adejumo to pay restitution to four banks in the total amount of $495,803.86. Adejumo appeals, arguing that the court lacked jurisdiction to order restitution because the government had submitted its restitution request a year after sentencing. He also challenges the sufficiency of the evidence underlying the award. According to Adejumo, the government should only have been allowed to seek restitution for the victim of the particular acts on which he had been convicted, not for other victims of his fraudulent scheme.

II.

Adejumo first challenges the district court's jurisdiction to order restitution under 18 U.S.C. § 3664. Section 3664(d)(5) provides that if a "victim's losses are not ascertainable" ten days before sentencing, the government or probation officer "shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." We review questions of statutory interpretation de novo. United States v. Zaic, 744 F.3d 1040, 1042 (8th Cir. 2014). If the district court at least makes clear at sentencing that it plans to order restitution, the fact that it "misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution." Dolan v. United States, 560 U.S. 605, 611 (2010). Although the delay here was six months longer than in Dolan, the district court retained its power to order restitution.

Adejumo also challenges the sufficiency of the evidence supporting the restitution award. We review the district court's loss calculation for clear error. United States v. Adetiloye, 716 F.3d 1030, 1038 (8th Cir. 2013). A restitution award is "limited to the victim's provable actual loss." United States v. Chalupnik, 514 F.3d 748, 754 (8th Cir. 2008). Restitution for funds not actually lost by a victim would be an impermissible windfall. See United States v. Louper-Morris, 672 F.3d 539, 566 (8th Cir. 2012). A bank may therefore recover restitution only to the extent sufficient evidence has proven its ultimate loss.

Although the government bears the burden of proving the restitution amount by a preponderance of the evidence, Adetiloye, 716 F.3d at 1039, "a district court is charged only with reasonably estimating the loss" when the amount lost through fraud is difficult to estimate, United States v. Alexander, 679 F.3d 721, 729 (8th Cir. 2012) (quoting United States v. McKanry, 628 F.3d 1010, 1019 (8th Cir. 2011)). While the Federal Rules of Evidence do not apply at sentencing, "information considered by the

sentencing court must have 'sufficient indicia of reliability to support [its] probable accuracy.'" United States v. Fleck, 413 F.3d 883, 894 (8th Cir. 2005) (alteration in original) (quoting United States v. Jones, 195 F.3d 379, 385 (8th Cir. 1999)). When "the defendant has objected to the amount of loss attributable to him, the government may meet its burden of proof by introducing testimony from the [investigating officer] or a sworn statement from the victim outlining the losses sustained as a result of the crime." Adetiloye, 716 F.3d at 1039 (citation omitted).

We conclude that the government failed to provide sufficient evidence of the ultimate losses Adejumo caused the victim banks. The district court received bank records and other documentary evidence showing the amounts of money Adejumo initially obtained through his fraudulent scheme. Because of the long delay between Adejumo's offenses and the restitution hearing, the documentary evidence showing the initial losses does not sufficiently show how much each bank ultimately lost. At the resentencing hearing, IRS special agent James Shoup testified that banks sometimes recover funds which initially appeared lost by fraud. The government introduced an unsigned report that listed Chase Debit's loss to have been $237,108.99 as of 2009. That loss does not of course prove its 2015 loss.

The only evidence of the ultimate losses to the banks was presented in Agent Shoup's testimony. No bank officials testified or submitted sworn statements, but Shoup testified that bank officials had estimated their ultimate losses in conversations with him and in emails. Shoup could not remember the details of these communications, however, and in some cases he could not even remember the name of the bank official who had provided the information. He also testified that officials sometimes overstate the losses the bank has suffered. Here, for example, Anchor Bank retained $27,000 that it had initially reported to be a loss, and Guaranty Bank recovered $972 that bank documents had initially shown as a loss. Shoup's own testimony showed that loss statements by the bank officials were not all accurate. The government also failed to show that the loss amount listed in the plea agreement

-4-

was an ultimate loss to Chase. Based on the record here, we conclude that the government's evidence was clearly insufficient to show the ultimate losses suffered by the victims. The restitution order should therefore be vacated.[1]

While the purpose of restitution is to make victims whole, a remand is not in order given this record. The government has sought restitution from time to time during the long period since Adejumo's original sentencing proceeding. Despite its awareness of Adejumo's objections to its evidence, the government has not introduced additional evidence to prove the ultimate losses to the banks. Since more than four years have passed after Adejumo was originally sentenced, and in the interest of finality, we decline to remand for a third restitution proceeding. See United States v. Bertucci, 794 F.3d 925, 932 (8th Cir. 2015); United States v. Dagostino, 520 F. App'x 90, 92 (3d Cir. 2013).

For these reasons the restitution award is vacated.

_____

[1]Because the restitution award is being vacated, we need not consider whether the district court properly ordered restitution after sentencing when Adejumo had claimed the amount was ascertainable more than 10 days prior to sentencing. See 18 U.S.C. § 3664(d)(5).