# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3081
_____

United States of America

*Plaintiff - Appellee*

v.

Carstie Lee Clausen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 15, 2019
Filed: February 5, 2020

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

On August 8, 2016, a United States Customs and Border Protection ("CBP")
agent and a Polk County sheriff's deputy, investigating marijuana grows in northwest
Minnesota, flew a CBP helicopter over Carstie Lee Clausen's property in Clearwater
County. After three or four flyovers, Clausen grabbed his .30-30 rifle and opened
fire. One bullet went through the cockpit, causing extensive damage to the helicopter
and minor injuries to the sheriff's deputy. Clausen pleaded guilty to assaulting a

federal agent in violation of 18 U.S.C. § 111(a) and (b) and damaging an aircraft in the special aircraft jurisdiction of the United States in violation of 18 U.S.C. § 32(a)(1). The district court[1] sentenced Clausen to 60 months imprisonment and later ordered him to pay $19,619.45 in restitution to the United States Government for its actual loss caused by his offense -- costs incurred in repairing the damaged CBP helicopter. Clausen appeals the restitution order, arguing the district court erred in ordering restitution based on the government's untimely, unsubstantiated request. Reviewing the court's decision to award restitution for abuse of discretion, and its findings as to the amount of loss for clear error, we affirm. United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011) (standard of review).

## I. Sentencing Background.

Clausen's plea agreement provided that his offense requires "payment of mandatory restitution in an amount to be determined by the Court." At the June 20, 2017, change of plea hearing, the district court warned that "the government's going to ask that you make restitution to the government for the damage done to the helicopter." Clausen stated he understood. The court accepted Clausen's guilty plea and scheduled an evidentiary hearing six days later to address contested sentencing issues. The government began the June 26 evidentiary hearing by stating that its witnesses and exhibits would address "the nature of the mission, the helicopter itself, the damage done to the helicopter and the markings, and then Mr. Clausen's explanations that day of what had happened." Regarding damage to the helicopter, the CBP pilot explained how the bullet entered through the left side of the cockpit, passed over his passenger's shoulder, exited through the roof of the cabin, and lodged inside the oil cooler fairing. John Clark, a CBP aviation maintenance officer, described the extensive efforts to repair the helicopter, concluding that Clausen cost

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

the government "roughly $19,600." Clausen did not cross-examine these witnesses about the costs of repair.

The Presentence Investigation Report ("PSR") was distributed to counsel on August 31, 2017. Paragraph 85 stated that "restitution shall be ordered in this case" but "the government has not advised this officer of any loss associated with the damage to the helicopter." Paragraph 14 advised that "[i]nvestigative materials included a list of losses and repairs associated with damage to the helicopter":

| Type of Loss | Loss Amount |
|---|---|
| "Manhours" (266.5 hours) | $ 7,195.50 |
| Parts | $10,134.37 |
| Travel | $ 1,789.58 |
| Overtime | $ 500.00 |
| **Total:** | **$19,619.45** |

The PSR stated it was "unclear whether the . . . figures represent[ed] restitution amounts being claimed or pursued by the government." The government filed its Position with Respect to Sentencing in early November, three weeks before the sentencing hearing, stating:

> The United States will ask the Court to order the defendant to pay for restitution in the amount of $19,619.45. The defendant shot down a Customs and Border Patrol helicopter and should pay for that damage.

At sentencing, defense counsel advised that Clausen did not object to the fact statements in the PSR, and the district court adopted those statements. The government stated that it was asking the Court to order restitution "in excess of $19,000 to the United States government . . . for the damage to the helicopter." The district court advised that the probation officer had provided a document "that totals up to $19,619.45 for repairs to the helicopter." Defense counsel stated she had not

seen that document. The court then stated: "What I would do dealing with restitution is that I will keep that open so [the government] can have this verified so defense counsel can have it and check the costs of the repairs." In pronouncing the sentence, the court declared, "Mandatory restitution is due . . . . That amount of restitution will be determined within 90 days of today's date." The court entered judgment; Clausen timely appealed.

Ninety-seven days later, the government filed a request for an amended judgment including restitution in the amount of $19,619.45. Clausen challenged the sufficiency of the government's supporting evidence and argued "that there is no jurisdictional basis for ordering restitution in this case." The district court ruled "that it has jurisdiction" under Dolan v. United States, 560 U.S. 605 (2010), and granted the government's request for an amended judgment, finding that Paragraph 14 of the PSR and testimony by the government's witnesses at the evidentiary hearing "provided an adequate evidentiary basis for the restitution requested," which Clausen "had the opportunity to test or rebut . . . through cross examination at the evidentiary hearing and during the extended time that the Court left restitution open in order to allow [him] to review the requested repair costs." Clausen appeals that ruling.

## II. Discussion.

**A. The Procedural Issue.** It is undisputed that Clausen's offense made him subject to the Mandatory Victim Restitution Act ("MVRA"), which provides that the district court "shall order . . . that the defendant make restitution to the victim of the offense." See 18 U.S.C. §§ 3663A(a)(1), (c). Procedurally, the MVRA provides that, "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing . . . the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." § 3664(d)(5). Here, the district court made its "final determination" of the restitution owed 280 days after it sentenced Clausen on November 29, 2017.

In Dolan, a divided Supreme Court, resolving a conflict in the circuits, held that "a sentencing court that misses [§ 3664(d)(5)'s] 90-day deadline nonetheless retains the power to order restitution -- at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." 560 U.S. at 608. Based on Dolan, we have held that a district court retains the power to order restitution if it advises the defendant at sentencing that restitution will be ordered and keeps the issue open under § 3664(d)(5) until the amount owed can be determined. See United States v. Thunderhawk, 860 F.3d 633, 636 (8th Cir. 2017).

On appeal, both parties assume that § 3664(d)(5) applies in this case and therefore Dolan is the governing procedural authority. But by its plain language, § 3664(d)(5) applies only "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing." Here, the government's claimed loss for helicopter repair costs in the amount of $19,619.45 was known, finally determined, and disclosed to Clausen and the court *well before* the sentencing hearing. At that hearing, defense counsel advised that she had not seen the document detailing the repair costs set forth in Paragraph 14 of the PSR. The district court quite properly deferred its restitution ruling until the defense could examine the document and decide whether to challenge the government's evidence. As the costs were ascertainable before sentencing, this was not a § 3664(d)(5) extension. The court could have simply granted a reasonable sentencing continuance for this purpose. Instead, relying on Dolan, it entered final judgment and declared that the "amount of restitution will be determined within 90 days of today's date."

If § 3664(d)(5) does not apply, we have the situation debated at length but not resolved by the majority and dissenting Justices in Dolan -- whether the strict limits on a district court's authority to modify a sentence it has imposed mean that "any order of restitution must be imposed *at sentencing*, if it is to be imposed at all." 560

U.S. at 622 (Roberts, C.J., dissenting) (emphasis added).[2]  Chief Justice Roberts reasoned that "[t]o say that a court lacks authority to order belated restitution does not use 'authority' in a jurisdictional sense" because "[s]uch action is an error of law, reversible on appeal, but it is not jurisdictional." Id. at 626.  Here, that arguable error of law has been forfeited, raised neither in the district court nor on appeal.  If there was an error -- an issue we do not decide -- it was not plain error because Clausen led the district court into assuming that Dolan was the governing procedural authority.

On appeal, Clausen assumes that Dolan provided the district court authority to enter a belated restitution order but argues that the delay caused him prejudice -- he "lacked enough information to properly rebut the claimed losses," and changed circumstances such as completion of the helicopter repairs make it too late to hold a proper evidentiary hearing.  This contention is without merit.  The district court delayed its restitution ruling for ninety days to give Clausen an opportunity "to properly rebut the claimed losses."  He declined to do so, just as he declined to cross-examine aviation maintenance officer Clark at the June 26 evidentiary hearing, where Clark recounted the extensive repair efforts and concluded that Clausen's rifle shot cost the government "roughly $19,600."  As the majority noted in Dolan, "the defendant normally can mitigate any harm that a missed deadline might cause -- at least if, as here, he obtains the relevant information regarding the restitution amount before the 90-day deadline expires." 560 U.S. at 615-16.  Thus, the district court did not abuse its discretion by granting an extension of time to finally determine the amount of restitution because the extension did not prejudice Clausen's ability to challenge the government's restitution claim.

---

[2]In United States v. Adejumo, we carefully declined to consider "whether the district court properly ordered restitution after sentencing when . . . the amount was ascertainable more than 10 days prior to sentencing."  848 F.3d 868, 871 n.1 (8th Cir. 2017), citing 18 U.S.C. § 3664(d)(5).

**B. Reasonableness of the Award.**  Clausen argues the government failed to meet its burden to prove compensable actual loss because the government (1) failed to prove that his offense caused all the losses, and (2) did not adequately substantiate a loss of $19,619.45.

1.  The MVRA provides that, "in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense," an order of restitution shall require that the defendant "return the property to the owner," if practicable.  18 U.S.C. § 3663A(b)(1)(A).  "[C]lean-up or repair costs may be ordered under the MVRA, provided the defendant is not required to compensate the victim twice for the same loss."  United States v. Quillen, 335 F.3d 219, 226 (3d Cir. 2003); accord United States v. Barton, 366 F.3d 1160, 1167 (10th Cir. 2004).  The purpose of this mandate is "to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being."  Frazier, 651 F.3d at 904 (quotation omitted).  Thus, "[t]he government can be a 'victim' entitled to restitution, but the award must be based on the amount of loss *actually caused* by the defendant's offense."  United States v. Petruk, 484 F.3d 1035, 1036 (8th Cir. 2007) (cleaned up).

Clausen argues he did not cause the full $19,619.45 in losses because the government would have paid the costs of "manhours" and "overtime" for its own maintenance workers even if Clausen had not committed his offense.  We disagree.  In United States v. Haileselassie, we observed that the government's internal labor costs are, in certain circumstances, a "true involuntary victim cost directly and proximately caused by [the defendant's] offense."  668 F.3d 1033, 1036 (8th Cir. 2012) (referring to the "cost of determining if an imminent threat to the safety of government workers or operations exists").  As the Tenth Circuit explained in United States v. Wilfong, "awarding restitution to [the government] for lost employee work time, valued at the employees' wages, is not economically equivalent to compensating

for lost profits or income." 551 F.3d 1182, 1186 (10th Cir. 2008), <u>cert. denied</u>, 556 U.S. 1215 (2009).

Here, the pilot testified that Clausen's rifle shot activated a fuel system warning light, which required an emergency landing in Fosston, Minnesota. Maintenance officer Clark testified that maintenance workers removed the helicopter's blades to store it in the airport hangar and then hired a trucking company to haul the helicopter seventy miles to its base in Grand Forks, North Dakota, using a crane to lift it over the fence and onto a trailer. In Grand Forks, some of the wiring was remanufactured and replacement parts were obtained from Texas and France. A team from Great Falls, Montana repaired the area where the bullet exited the cabin. These costs, Clark testified, cost the government "roughly $19,600." The district court did not clearly err in finding that Clausen's offense caused the claimed losses.

2. Clausen further argues the government did not satisfy its burden to substantiate its loss by a preponderance of the evidence because it relied on the listing of broad cost categories in Paragraph 14 and on Clark's testimony that the loss was "roughly $19,600." <u>See</u> 18 U.S.C. § 3664(e) (burden of proof). The government can satisfy its burden of proof "by introducing testimony from the investigating . . . inspector or a sworn statement from the victim outlining the losses sustained as a result of the crime." <u>United States v. Adetiloye</u>, 716 F.3d 1030, 1039 (8th Cir. 2013) (citations omitted), <u>cert. denied</u>, 572 U.S. 1040 (2014). To be sure, we have reversed restitution awards that were based solely on "a single page which listed four victim banks [and the] amounts purportedly owed to each," <u>United States v. Adejumo</u>, 777 F.3d 1017, 1020 (8th Cir. 2015), or on summary tables accompanied by no supporting testimony, <u>Adetiloye</u>, 716 F.3d at 1040. But here, the helicopter pilot and Clark gave detailed testimony at the evidentiary hearing relating how the bullet damaged the helicopter and explaining the extensive repair efforts that were required. Clausen did not cross-examine these witnesses, nor did he object to the fact statements in Paragraph 14 of the PSR, which the district court adopted.

Absent contrary evidence from Clausen, who had been given time to examine the government's documentary evidence and request a hearing, the record before the district court consisted of the unchallenged table in Paragraph 14, broken into general cost categories, supported by the testimony of witnesses with first-hand knowledge and by Clausen's admission that he damaged the helicopter.  We conclude the court did not clearly err in finding that the government substantiated its claim for restitution in the amount of $19,619.45.  See United States v. Engelmann, 720 F.3d 1005, 1015-16 (8th Cir. 2013); United States v. Kay, 717 F.3d 659, 667 (8th Cir. 2013).

The judgment of the district court is affirmed.

_____